PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
    *Plaintiff-Appellant,*

v.

RIDDICK LAMONT BOWE, SR.,
    *Defendant-Appellee.*

No. 00-4269

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Graham C. Mullen, Chief District Judge.
(CR-98-117-MU)

Argued: May 10, 2001

Decided: July 13, 2001

Before NIEMEYER and GREGORY, Circuit Judges, and
Arthur L. ALARCON, Senior Circuit Judge of the
United States Court of Appeals for the Ninth Circuit,
sitting by designation.

Vacated and remanded by published opinion. Senior Judge Alarcon
wrote the opinion, in which Judge Niemeyer and Judge Gregory
joined.

## COUNSEL

**ARGUED:** Kenneth Davis Bell, Assistant United States Attorney,
OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North
Carolina, for Appellant. Thomas S. Hicks, THOMAS S. HICKS,

P.L.L.C., Wilmington, North Carolina, for Appellee. **ON BRIEF:** Mark T. Calloway, United States Attorney, C. Nicks Williams, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellant.

---

## OPINION

ALARCON, Senior Circuit Judge:

The Government seeks reversal of the district court's sentencing decision on discrete grounds. It maintains that the district court erred in denying the Government's motion to set aside the plea agreement. The Government also contends that the district court clearly erred in finding that Riddick Lamont Bowe Sr.'s ("Bowe") conduct during the commission of the crime did not involve violence or a serious threat of violence. We vacate the sentence because we conclude that the district court clearly erred in finding that Bowe did not violate the express terms of the plea agreement. We also determine that the district court clearly erred in finding that Bowe's conduct was not violent and did not involve a serious threat of violence.

I

Bowe is a professional boxer and a former world heavyweight boxing champion. He is 6′5″ tall and weighs 260 pounds. He married Judy Gordon ("Mrs. Bowe") on April 27, 1988. Bowe and his wife separated in June of 1997. After their separation, Bowe continued to reside in Fort Washington, Maryland. Mrs. Bowe and their five children moved to Cornelius, North Carolina.

Bowe unsuccessfully attempted on several occasions to effect a reconciliation. On February 24, 1998, he telephoned Mrs. Bowe at 10:30 p.m. The telephone call continued for approximately 90 minutes. Bowe tried to persuade his wife to agree to reconcile their differences and return to his home in Maryland. During this conversation, Bowe asked Mrs. Bowe what time their children left the house to go to school. He also told her he had a surprise for her.

After the telephone conversation terminated, Bowe borrowed a Lincoln Navigator from a former employee. He placed a bag in the vehicle that contained a flashlight, duct tape, pepper spray, and hand-cuffs. He was also armed with a buck knife. He then drove to Corne-lius, North Carolina with his brother, Aaron Wright.

Bowe arrived at Mrs. Bowe's residence at approximately 6 a.m. on February 25, 1998. He drove past the home several times before park-ing across the street. At approximately 6:50 a.m., the Bowes' three oldest children left the home and proceeded to the bus stop at the end of the street. Bowe drove the Lincoln Navigator to the bus stop. There, he ordered the children to get into the Lincoln Navigator. After the children complied, he drove the vehicle onto Mrs. Bowe's drive-way. He left the driver's side door open and the engine running. His brother remained in the vehicle with the children.

Bowe ran to the front door and forced it open. He pushed Lynette Shaw, Mrs. Bowe's cousin, back inside the house and motioned her to be quiet. He asked Ms. Shaw to tell him where Mrs. Bowe was located. With hand gestures, he indicated that he would hit Ms. Shaw if she did not disclose Mrs. Bowe's whereabouts. Ms. Shaw led Bowe to Mrs. Bowe's bedroom. He shoved the door open, removed the bed covers, and ordered Mrs. Bowe to get up. He gestured that he would hit her if she did not comply. He demanded that she prepare herself and the two youngest children to leave immediately for Maryland. Mrs. Bowe only had time to put on a skirt before he forced her and the children out of the house and into the vehicle. Her upper body was covered by her pajama top.

En route, Bowe displayed the flashlight, duct tape, pepper spray, and handcuffs to Mrs. Bowe and told her "I came prepared." He also informed her that if he had found her with another man, he would have killed both of them. At one point, he stabbed Mrs. Bowe on her left breast through a heavy jacket that she was wearing. She bled from the resultant wound. He also slapped her.

In addition, Bowe ordered his wife to call her attorney and instruct him to suspend the pending divorce proceedings and that she did not wish to continue to press criminal charges in Maryland that she had initiated against him because of an earlier assault. Bowe also ordered

her to call her brother and direct him to move all her furniture to Bowe's residence in Maryland. Mrs. Bowe dialed her attorney and her brother on a cellular phone. Her attorney's secretary informed her that her attorney was not available. Her call to her brother was unanswered. When Mr. Wright stopped the vehicle at a restaurant in Virginia, Mrs. Bowe went to the ladies restroom. Bowe stood guard outside the door. He poked his head inside the door periodically and asked her to hurry up. While in the restroom, Mrs. Bowe called Ms. Shaw in North Carolina to notify her of the location of the restaurant. Mrs. Bowe also asked two elderly women who were in the restroom to contact the police to inform them that she was being kidnapped.

Shortly after they left the restaurant, South Hill, Virginia police officers stopped the Lincoln Navigator. The police acted in response to a 911 telephone call from a restaurant employee. Mrs. Bowe drove back to her home in North Carolina in the Lincoln Navigator.

## II

On June 2, 1998, Bowe was named in a one-count indictment charging him with a violation of 18 U.S.C. § 2261(a)(2). The indictment contains the following allegation:

> Riddick Lamont Bowe, Sr., knowingly, willfully, and unlawfully did cause a spouse and intimate partner Judy Bowe, to travel across a State line, that is from North Carolina to Virginia, by force, coercion, duress, and fraud; and in the course of and as a result of that conduct, did intentionally commit a crime of violence, that is, kidnaping and assault, and thereby caused bodily injury to said spouse and intimate partner, in violation of Title 18, United States Code, Section 2261(a)(2).[1]

---

[1]At the time of the offense, Section 2261(a)(2) read as follows:

A person who causes a spouse or intimate partner to cross a State line or to enter or leave Indian country by force, coercion, duress, or fraud and, in the course or as a result of that conduct, *intentionally commits a crime of violence and thereby causes bodily injury to the person's spouse* or intimate partner, shall be punished as provided in subsection (b). (emphasis added).

On June 4, 1998, the parties entered into a plea agreement. The plea agreement states that Bowe "admits to being in fact guilty as charged [in the indictment]." The parties stipulated that Bowe's adjusted offense level under the Sentencing Guidelines should be 15. The plea agreement also provides that "no departures will be sought by either party and all arguments are limited to recommendations regarding a sentence within the applicable range of the U. S. Sentencing Guidelines." The parties agreed that "[t]he Probation Office will compute the defendant's Criminal History under the Sentencing Guidelines."

The plea agreement further states that:

> The defendant is aware that if the Probation Office determines that a different offense level or a Guideline not addressed in this agreement applies, and the Court finds that the Probation Office is correct, then the Court will use that offense level or Guideline in determining the sentence. Nothing in this Plea Agreement will prevent either the United States or the defendant from arguing, before the sentence is imposed, for the offense level as agreed upon herein and a sentence within the corresponding U.S.S.G. range.

Bowe also agreed to waive "the right to contest either the conviction or the sentence in any direct appeal or other post-conviction action, including any proceeding under 28 U.S.C. § 2255."

### III

On June 4, 1998, Bowe entered a plea of guilty. Before accepting the plea, the magistrate judge summarized the allegations in the indictment as follows:

> It is alleged in this count of the indictment returned June 2nd, 1998, that on or about February 25, 1998, in Mecklenburg County, North Carolina, which is within the Western District of North Carolina for federal judicial purposes, that you, Riddick Lamont Bowe, Sr., knowingly, willfully, and unlawfully did cause a spouse and intimate partner, a Judy

Bowe, to travel across a state line, that is, from North Caro-
lina to Virginia, by force, coercion, duress, and fraud; and
that in the course of and as a result of that conduct, you did
intentionally commit a crime of violence, that is, kidnapping
and assault, and that you caused bodily injury to your
spouse and intimate partner, all of which would be in viola-
tion of Title 18, U.S. Code, Section 2261(a)(2).

Bowe testified under oath that he committed the crime charged in the
indictment.

During the plea proceedings, the Government informed the court
orally that:

[P]rovided the defendant enters this plea agreement and suc-
cessfully completes this plea agreement, that there will be
no further charges or indictment brought by the United
States against anyone and that the interest of the United
States in this matter that occurred on or about February
25th, 1998, will be concluded.

IV

The Probation Office issued a presentence report ("PSR") in this
matter on September 3, 1998. The Probation Office agreed with the
parties' stipulation that Bowe's adjusted offense level was 15. The
PSR stated that the applicable Sentencing Guideline range was
imprisonment for 18 to 24 months. The Probation Office concluded
that it had "no information concerning the offense or the offender
which would warrant a departure from the prescribed sentencing
guidelines."

Bowe filed a reply to the PSR on October 9, 1998 in which he
stated that "the following matters are submitted for the Court's con-
sideration as information that would warrant departure from the pre-
scribed sentencing guidelines." Following this statement, Bowe listed
ten factors in bold letters under the heading "REASONS WHICH
MIGHT JUSTIFY DEPARTURE FROM THE FEDERAL SEN-
TENCING GUIDELINES." Among these reasons, Bowe stated that

upon returning to Maryland, he had checked himself into a mental hospital to seek treatment and rehabilitation.

On November 4, 1998 the Government sent a letter to Bowe's counsel informing him that the defendant's reply to the PSR violated the plea agreement. The Government urged Bowe to withdraw his reply to the PSR and "state to the court that he is not seeking a departure from the guidelines, that no departure from the guidelines is warranted, and that the sentence should be within the guideline range."

On November 6, 1998, Edward T. Henson, Jr., one of Bowe's attorneys, filed a document in the district court which states: "Defendant hereby withdraws [Defendant's Reply to Presentence Investigation Report] and hereby reaffirms his desire to honor his obligations under the Plea Agreement, and specifically disavows any desire to breach the Plea Agreement."

In an addendum to the PSR dated November 30, 1998, the Probation Office notified the court that although Bowe acknowledged the fact that the plea agreement "restricts the defendant's ability to seek departure from the Federal Sentencing Guidelines . . . the defendant seeks a downward departure pursuant to U.S.S.G. § 5H1.7 citing the circumstances which led to the defendant's role in this offense."

V

The sentencing proceedings were conducted on February 28, 2000 and February 29, 2000. The court initially found that Bowe's plea of guilty was knowingly and voluntarily made and directed the entry of a "verdict of guilty." The court then noted that based on "conversations in chambers," Bowe's counsel wanted to be heard "with reference to some medical issues."

Bowe's counsel advised the court that, after entering into the plea agreement, "[w]e discovered information about Mr. Bowe's mental capacity that we did not know at the time we entered the plea. So while we stand by the plea, we think it's very appropriate that this court have this information." Defense counsel informed the court that he was prepared to call several witnesses in order to present evidence

not known at the time the plea agreement was entered "because in the final analysis, this court must make the decision as to what is the appropriate amount of time for Mr. Bowe, *if any*." (emphasis added). At this point, the prosecutor requested that the court declare the plea agreement to be null and void. He argued that "[t]he plea agreement requires that the parties recommend to the Court a sentence within the applicable guideline range which is 18 to 24 months." In making this motion, the prosecutor relied on the provision in the plea agreement stating that "[i]n the event the defendant fails to comply *strictly* with this Plea Agreement, he understands and agrees that the Plea Agreement will become null and void. . . ." (emphasis added). The court denied the motion stating: "I've accepted the plea agreement. That's fine. I'm not, however, bound to reject any evidence which would lead me to believe that the plea agreement as drafted is inappropriate. The Court notes and finds that the file is replete with information that a potential problem of diminished capacity existed." The court did not cite any portion of the file that referred to diminished capacity.

After hearing evidence presented from both sides concerning Bowe's mental condition, the court stated that "on this evidence the Court believes that it is possible that a court-initiated departure downward under 5K2.13 for diminished capacity may exist."[2] The court then instructed counsel "simply to address the kinds of findings of fact that are appropriate" in applying section 5K2.13. Later in the proceedings, the court stated: "The issue is whether the facts and circum-

---

[2]Section 5K2.13 provides as follows:

A sentence below the applicable guideline range may be warranted if the defendant committed the offense while suffering from a significantly reduced mental capacity. However, the court may not depart below the applicable guideline range if (1) the significantly reduced mental capacity was caused by the voluntary use of drugs or other intoxicants; (2) the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense involved actual violence or a serious threat of violence; or (3) the defendant's criminal history indicates a need to incarcerate the defendant to protect the public. If a departure is warranted, the extent of the departure should reflect the extent to which the reduced mental capacity contributed to the commission of the offense.

stances, whether [the crime] involved actual violence or serious threat of violence."

The prosecutor argued that the evidence offered by the defense did not support a finding that Bowe suffered from a significantly reduced mental capacity to trigger the application of section 5K2.13. The prosecutor also argued that even if the court were to find that Bowe did suffer from a significantly reduced mental capacity, section 5K2.13 was inapplicable because Bowe committed actual violence by stabbing his wife with a buck knife. In addition, his menacing her with a long, heavy buck knife, accompanied by threatening gestures with his fist, constituted a serious threat of violence.

The court found that Bowe did not intentionally stab Mrs. Bowe. Instead, the court found that Bowe inflicted a wound on his wife's breast when "he gestured toward his wife with the knife to emphasize some argumentative point that they were making." The court concluded that the stabbing incident did not evince actual violence. The court also found that Bowe's conduct did not create a substantial threat of violence. The court noted that Bowe's statement that if he had found his wife with a man he would have killed them "is insufficient to constitute a serious threat of violence." The court also found that Bowe suffered from diminished capacity. The court concluded that Bowe was entitled to a five-level downward departure pursuant to section 5K2.13 and sentenced Bowe to a term of 30 days in a community confinement center and placed him on probation for a period of four years. In addition, Bowe was ordered to pay a fine of $5,000.00 and assessed a penalty of $100.00.

The Government filed a timely notice of appeal from the district court's judgment and sentence.

## VI

We must, as a preliminary matter, determine whether the Government may bring this appeal in light of this court's decision in *United States v. Guevara*, 941 F.2d 1299 (4th Cir. 1991). In *Guevara*, this court held that a plea agreement provision that bars the defendant from appealing, but is silent as to the Government's right to appeal, must be construed as imposing a reciprocal limitation on the Govern-

ment's right to challenge a judgment or sentence imposed by the district court. *Id.* at 1299. As in *Guevara*, Bowe agreed in the plea agreement to "waive[ ] the right to contest either the conviction or sentence in any direct appeal or other post-conviction action, including any proceeding under 28 U.S.C. § 2255." The plea agreement does not refer to or limit the Government's right to appeal.

This court has not yet decided whether *Guevara* bars the Government from appealing where, as here, it contends that the defendant breached the plea agreement. Because of the reciprocal limitation upon the Government's right to appeal where a defendant has waived the right to seek appellate review of a judgment of conviction or a sentence, we focus our inquiry on whether Bowe would have had the right to appeal if the Government had breached the plea agreement. This issue was addressed in *United States v. Gonzalez*, 16 F.3d 985 (9th Cir. 1994). In *Gonzalez*, the Ninth Circuit concluded that a defendant's waiver in a plea agreement of his right to appeal was not enforceable where the Government had breached the agreement by opposing a departure for acceptance of responsibility. *Id.* at 988-990; *see also United States v. Rosa*, 123 F.3d 94, 98 (2d Cir. 1997) (stating that "[a] defendant may appeal if the Government breaches the terms of the plea agreement."). We agree with our sister circuits that a party's waiver of the right to seek appellate review is not enforceable where the opposing party breaches a plea agreement. Had the Government breached the plea agreement, Bowe would not have been bound by his waiver. We conclude that this principle must also be applied reciprocally. We hold that where a defendant has materially breached the terms of the plea agreement, the Government is released from its implied reciprocal promise under *Guevara* not to appeal the merits of a judgment of conviction or sentence. *See Gonzalez*, 16 F.3d at 990 (holding that "the government by its breach of the agreement released [the defendant] from his promise in [the plea agreement] not to appeal. Once released from the bar of the appeal waiver, [the defendant] may raise any claim relating to the sentence, except a contention that first should have been presented to the district court."). Because of Bowe's alleged breach of the plea agreement, the Government is not barred by *Guevara* from seeking review of the denial of its motion to nullify the plea agreement and the validity of the departure based on diminished capacity.

## VII

We now turn to the question whether Bowe breached paragraph 4(c) of the plea agreement. We review a claim that a party has breached a plea agreement under a bifurcated standard, reviewing the district court's factual findings for clear error, while reviewing the district court's application of principles of contract interpretation *de novo. United States v. Snow*, 234 F.3d 187, 189 (4th Cir. 2000). Whether Bowe's presentation of evidence whose only purpose was to support a downward departure constituted a breach of the plea agreement is a question of contract interpretation which we review *de novo*. *See United States v. Martin*, 25 F.3d 211, 216-17 (4th Cir. 1994) (holding that the Government's failure to file a motion seeking a downward departure at sentencing was a question of contract interpretation requiring *de novo* review) (disagreement on other grounds recognized in *United States v. Speed*, 53 F.3d 643 (4th Cir. 1995)).

The district court concluded that the defense's presentation of evidence of diminished capacity and its recommendation that the court consider ordering that Bowe not be incarcerated was "clearly no effort on the part of the defense to upfront sabotage the plea argument." The court noted that:

> The document in and of itself contemplates in paragraph 4, I believe it's (g), that evidence may be discovered by the probation office. 4(g). If a different offense level or guideline not addressed applies and the court finds the probation officer is correct, then okay. So the document itself clearly contemplates the possibility of something other than the sentence described therein happen [sic].

Paragraph 4(g) reads as follows:

> The defendant is aware that if the Probation Office determines that a different offense level on a Guideline is correct, then the Court will use that offense level or Guideline in determining the sentence. Nothing in this Plea Agreement will prevent either the United States or the defendant from arguing before the sentence is imposed *for the offense level*

*as agreed upon herein and a sentence within the corre-sponding U.S.S.G. range.* (emphasis added).

Contrary to the court's interpretation, none of the language set forth in Paragraph 4(g) authorizes the Government or defense counsel to introduce evidence to demonstrate "that a different offense level or a Guideline" not addressed in the plea agreement applies. By its express language, Paragraph 4(g) restricts the court's consideration of a different offense level or a Guideline to evidence that the Probation Office determines is appropriate. Paragraph 4(g) expressly limits the prosecutor and defense counsel to argument concerning "the offense level *as agreed upon herein*." The offense level agreed upon by the parties was 15.

Furthermore, the Probation Office did not determine that a different offense level other than 15 was applicable under these facts. In the addendum to the probation report, the Probation Office noted that in the Defendant's Reply to Presentence Report "the defendant seeks a downward departure pursuant to U.S.S.G. § 5H1.7 citing the circum-stances that led to the defendant's role in the offense." The Probation Officer informed the court that "there was no role adjustment assessed under the Sentencing Guidelines." The Probation Officer's addendum concludes with this language: "[t]hese objections have no effect on guidelines calculations." Nevertheless, the district court concluded that the presentation of evidence to support a downward departure in violation of paragraph 4(c) of the plea agreement was "basically the functional equivalent" of the type of information that the court could act upon pursuant to paragraph 4(g).

The court informed one of Bowe's defense counsel that he should have "brought this to the attention of the probation officer so that I — I mean, that way it could have come forward as an addendum to this. There would — no issue could have been tendered about that." This comment demonstrates that the court overlooked the fact that defense counsel had in fact informed the Probation Office that Bowe was entitled to a downward departure, but had subsequently with-drawn the objection to the PSR because defense counsel was per-suaded that it violated the plea agreement.

We note also that the court may have been led astray by defense counsel's argument that pursuant to paragraph 4(d) of the plea agreement, the court was free to consider evidence offered by the defense that would assist the court in exercising its discretion in determining whether it should depart from the applicable Sentencing Guideline range.[3] Paragraph 4(d) provides that "the United States agrees to recommend that the defendant receive an additional one-level reduction pursuant to U.S.S.G. § 3E1.1(b)(2). However, the defendant understands that any reduction in offense level is ultimately for the Court's determination." Contrary to Bowe's contention, nothing in this language authorized Bowe to ignore his promise not to seek or argue for a downward departure from the applicable range for an adjusted offense level of 15. Paragraph 4(d) merely sets forth Bowe's understanding that the district court would be free to reject *the Government's recommendation* that Bowe receive a one-level reduction pursuant to section 3E1.1(b)(2). The court's conclusion that Bowe could present evidence to support a downward departure permitted him to violate the plain language of paragraph 4(c) of the plea agreement that explicitly prohibits the parties from seeking or arguing for a departure from the applicable Sentencing Guideline range.

In support of his contention that his presentation of evidence in support of a downward departure did not violate paragraph 4(c) of the plea agreement, Bowe relies upon the First Circuit's decision in *United States v. Bradstreet*, 207 F.3d 76 (1st Cir. 2000) (*Bradstreet*

---

[3]Defense counsel argued as follows:

Your Honor, if I could just respond to that. We, of course, are opposed to the governments motion at this point. The plea agreement says in paragraph 4(c), "With regard to the sentence to be imposed, no departures will be sought by either party and all arguments are limited to recommendations regarding sentence within the applicable range of the U.S. Sentencing Guidelines."

Paragraph (d) has the language that we're all familiar with: "However, the defendant understands that any reduction in offense level is ultimately for the Court's determination."

As we all know, the place that the Court decides to sentence is for the Court and we will abide by our obligation in this plea agreement to not — not ask for a departure from this court.

*II*). Unlike the matter *sub judice*, *Bradstreet II* involved a *sentence* agreement entered into by the parties after the defendant was found guilty following a trial by jury. *Id.* at 78. Before sentencing, the Government agreed that it would not seek a two-level upward adjustment for abuse of a position of trust. The defendant agreed that the only ground upon which he could move for a downward departure was under a theory that his conduct was a single act of aberrant behavior. It was also agreed that the Government would oppose a downward departure on this ground. *United States v. Bradstreet*, 135 F.3d 46, 55 (1st Cir. 1998) (*Bradstreet I*).

The district court granted Bradstreet's motion for a downward departure finding that the defendant had engaged in a single act of aberrant behavior. *Id.* at 56. Bradstreet appealed from the judgment of conviction. The Government cross-appealed from the sentence imposed by the court. In *Bradstreet I*, the First Circuit vacated the sentence and remanded on the basis that the district court erred in concluding that the defendant's conduct constituted a single act of aberrant behavior. 135 F.3d at 58.

During the resentencing proceedings, the district court granted Bradstreet's motion for a downward departure based on his post-sentence rehabilitation. 207 F.3d at 79. The Government appealed in *Bradstreet II*. It contended that the district court erred in not holding Bradstreet to his sentencing agreement. *Id.* at 79. The First Circuit affirmed the sentence, holding that "the appropriate remedy for non-performance rests in the discretion of the trial courts." *Id.* at 80. In reaching this conclusion, the court in *Bradstreet II* relied on its earlier decision in *United States v. Martinez-Martinez*, 69 F.3d 1215 (1st Cir. 1995). In *Martinez-Martinez*, the Government and the defendant agreed to a two-level reduction for acceptance of responsibility. The Government also informed the court that it would not oppose an additional one-level reduction. The district court then informed the defendant that the parties' sentencing agreement was not binding on the court. *Id.* at 1218. In imposing the sentence, the court declined to award the third one-level reduction. *Id.*

The First Circuit affirmed the sentence in *Martinez-Martinez* on the basis that the record did not support an additional one-level decrease. *Id.* at 1225. It should be noted that *Martinez-Martinez* did not involve

a claim that the plea agreement had been breached. Furthermore, the First Circuit noted in *Martinez-Martinez* that "[t]he [district] court secured the defendants' understanding that any sentencing agreement between the parties was not binding on the court but merely a recommendation." *Id.* at 1218. We find no support in *Martinez-Martinez* for the proposition announced in *Bradstreet II* that where a party breaches a sentencing agreement by recommending a downward departure, the court can ignore the breach and grant the request. We decline Bowe's invitation to follow the rule adopted by the First Circuit in *Bradstreet II* that a district court may fashion a remedy based on a recommendation by a party that has violated the agreement of the parties under the circumstances presented in this record. Here, the record shows that the Government gave up its right to file more serious charges against Bowe, and agreed not to prosecute his brother, in exchange for a guilty plea and a promise not to seek a downward departure. In *Bradstreet I*, the Government did not make comparable concessions. Instead, it merely stipulated to what it believed to be an appropriate sentence after a jury trial, but *prior* to the defendant's prior conviction rehabilitation.

The law in this circuit is quite clear. "It is well- established that the interpretation of plea agreements is rooted in contract law, and that each party should receive the benefit of its bargain." *United States v. Peglera*, 33 F.3d 412, 413 (4th Cir. 1994) (quoting *United States v. Ringling*, 988 F.2d 504, 506 (4th Cir. 1993)). By fashioning a sentence below the applicable Sentencing Guidelines based on the evidence Bowe presented in violation of paragraph 4(c) of the plea agreement, the district court denied the Government the benefit of its bargain.

Because the plea agreement in this case is unambiguous in its prohibition of Bowe's right to present evidence to justify a downward departure on any ground, we hold that the district court erred as a matter of law in denying the Government's motion to nullify the plea agreement. We are not persuaded by Bowe's argument that he did not expressly request a downward departure, but rather only offered the court additional relevant evidence regarding his mental condition as permitted by 18 U.S.C. § 3661 and U.S.S.G. § 1B1.4. Had it been Bowe's intention to offer evidence bearing on diminished capacity consistent with his agreement not to seek a downward departure, he

could have done so by first presenting such evidence to the Probation Office, with a request that the court impose a sentence at the low end of the Sentencing Guideline range for an adjusted offense level of 15.

While Bowe did not explicitly request a downward departure, his suggestion that the district court should consider whether *any* imprisonment should be imposed was a thinly veiled end-run around his promise to honor his commitment "to comply strictly with this Plea Agreement."[4] It is clear to us that Bowe argued before the district court that the evidence of diminished capacity would justify a downward departure. Our sister circuits have rejected similar efforts by the Government to avoid express terms in a plea agreement. *See, e.g.*, *United States v. Clark*, 55 F.3d 9, 11-13 (1st Cir. 1995) (holding that the Government breached its plea agreement by effectively opposing departure for acceptance of responsibility at sentencing); *United States v. Canada*, 960 F.2d 263, 269 (1st Cir. 1992) ("While it can be argued that the government stopped short of explicitly repudiating the agreement, *Santobello* prohibits not only 'explicit repudiation of the

---

[4]The following statement from Bowe's counsel is an example of Bowe's transparent attempt to circumvent the plea agreement's express limitation on the seeking of a downward departure:

> [T]he government has closely policed the plea agreement we've entered into and has reminded us and the Court that we are not permitted to argue for a departure. And so your Honor, I'm going to try to avoid using that word completely.
>
> . . . .
>
> I want to tailor my remarks with the idea that another court may review this. . . . [I]f the government intends to pursue their argument further that we have somehow violated our agreement, I want to be very careful not to speak in guidelines speak if I can. If you will indulge me in that way. . . . [a]nd I will try to speak in the old fashioned language when judges were trusted to be just and fair in fashioning their judgments and didn't have to structure it quite so much along the lines of guideline speak.

In short, Bowe's counsel informed the court that he would argue that the court consider imposing a sentence below the range required for an adjusted offense level of 15 without using the "guideline speak" term "downward departure."

government's assurances, but must in the interests of fairness be read to forbid end-runs around them.'") (citation omitted).

Based on our independent review of the record, we hold that Bowe's counsel breached his agreement not to seek a downward departure. Because the court denied the Government's motion to nullify the plea agreement, it failed to consider whether it should impose a sentence within the Sentencing Guideline range for an adjusted offense level of 15, or set aside the guilty plea and order that the matter be tried. This circuit has previously recognized that "[w]here the bargain represented by the plea agreement is frustrated, the district court is best positioned to determine whether specific performance, other equitable relief, or plea withdrawal is called for." *United States v. Conner*, 930 F.2d 1073, 1076 (4th Cir. 1991). Accordingly, we leave to the district court upon remand the task of fashioning an appropriate remedy after considering the recommendations of the parties.[5]

## VIII

The Government also argues that the district court erred in departing downward based on diminished capacity under U.S.S.G. § 5K2.13. The Government contends that Bowe was not entitled to a downward departure under § 5K2.13 because the instant offense involved either "actual violence or a serious threat of violence." This court has held that "when applying § 5K2.13 the sentencing court should make a fact-specific investigation of the offense to determine whether it was non-violent." *United States v. Morin*, 124 F.3d 649, 653 (4th Cir. 1997). We review the district court's findings in this regard for clear error. *Id.*

The undisputed record reveals that Bowe forced his way into his estranged wife's house by pushing aside her cousin. He then compelled Mrs. Bowe to leave with him by gesturing that he would hit

---

[5]In determining the appropriate remedy, the district court should consider the fact that the Government agreed not to file other charges against Bowe and not to prosecute his brother for his participation in forcibly removing Mrs. Bowe and her children from North Carolina to Virginia, in exchange for Bowe's promise not to seek a downward departure.

her if she did not comply. One of Bowe's counsel argued before the district court that "we have a two-time former heavyweight boxer champion of the world whose fists are — the Court can see his hands. His hands and fists are so large they in and of themselves under state law can be considered as lethal weapons." Counsel's comments accurately reflect North Carolina law. *See State v. Krider*, 530 S.E. 2d 569, 573 (N.C. Ct. App. 2000) (noting that "[t]he size of both the actor and his victim are important factors in the determination of whether or not hands are deadly weapons."). The record shows that Bowe displayed a buck knife, a flashlight, duct tape, pepper spray, and handcuffs to his wife during the trip from North Carolina to Virginia. He told Mrs. Bowe that he had come prepared to kill her if he had found her with another man. Bowe stabbed his wife through a heavy leather jacket. He also slapped her. These facts clearly demonstrate that Bowe's conduct involved a serious threat of violence, regardless of whether the stabbing was intentional or inadvertent. During the commission of the crime, Bowe was armed with a deadly weapon, he threatened to hit his wife, and he stabbed her with a knife. The district court committed clear error in finding that Bowe's conduct was not violent and did not involve a serious threat of violence. *Morin*, 124 F.3d at 653. A district court lacks the discretion to depart downward pursuant to section 5K2.13 under such circumstances.

## CONCLUSION

The parties agreed not to seek or argue for a departure from the Sentencing Guideline range for an adjusted offense level of 15 (18 to 24 months). In violation of this promise, Bowe's counsel presented evidence that Bowe suffered from diminished capacity and should be permitted to receive treatment rather than punishment by incarceration.

In denying the Government's motion to have the court declare the plea agreement null and void, the district court erroneously permitted Bowe's counsel to violate the express terms of the plea agreement.

We conclude that the court erred in denying the Government's motion to nullify the plea agreement after the defense sought permission to present evidence for the purpose of persuading the court to impose a sentence that departed from the Sentencing Guidelines.

Upon remand, the court should determine whether the plea should be set aside, or whether a sentence should be imposed within the Sentencing Guideline range. Because Bowe's course of conduct included violent acts and a serious threat of violence, Bowe is not eligible for a departure pursuant to U.S.S.G. § 5K2.13.

This matter is remanded with instructions that the district court determine whether Bowe's guilty plea should be set aside, or whether he should be required to comply with his agreement not to seek or argue for a departure from the sentencing guidelines. If the district court concludes that the appropriate remedy in this matter is specific performance of the plea agreement, it is directed to impose a sentence that is within the applicable Sentencing Guideline range of 18 to 24 months for an adjusted offense level of 15, and not to depart based on evidence of diminished capacity.

*VACATED AND REMANDED WITH INSTRUCTIONS*