**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

No. 03-4195

CORNELL D. FRIEND, a/k/a Dave,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of West Virginia, at Clarksburg.
Irene M. Keeley, Chief District Judge.
(CR-02-36)

Argued: February 27, 2004

Decided: June 9, 2004

Before LUTTIG and MICHAEL, Circuit Judges, and
William D. QUARLES, Jr., United States District Judge
for the District of Maryland, sitting by designation.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Christopher Brian Denson, STEPTOE & JOHNSON, Clarksburg, West Virginia, for Appellant. Zelda Elizabeth Wesley, Assistant United States Attorney, Clarksburg, West Virginia, for Appellee. **ON BRIEF:** Thomas E. Johnston, United States Attorney, Clarksburg, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

## OPINION

PER CURIAM:

Appellant, Cornell Friend, appeals from the 97-month prison sen-
tence imposed upon him by the district court in connection with vari-
ous drug distribution convictions. Appellant contends that the district
court's imposition of a two-level enhancement for obstruction of jus-
tice and its denial of reduction for acceptance of responsibility were
in error. For the reasons that follow, we affirm.

### I.

After reaching a plea agreement with the government, appellant
pled guilty to aiding and abetting the distribution of approximately
3.48 grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and
841(b)(1)(C) and 18 U.S.C. § 2. J.A. 119-25. The district court
accepted Friend's guilty plea, but deferred acceptance of the proposed
plea agreement, stipulations, and non-binding recommendations until
it had received and reviewed the presentence report. *Id*. Appellant was
thereafter released on bond pending sentencing. J.A. 6, 129.

On November 25, 2002, the government moved the district court
to revoke Friend's release pending sentencing for failure to comply
with the conditions of his release. Specifically, the government
alleged that in late November Friend had sent a threatening AOL
instant message to co-defendant Andrew Hartnett, who had been
charged with aiding and abetting Friend's distribution of narcotics, in
violation of the condition of his release that he refrain from contacting
other witnesses and co-defendants in the case and from threatening,
harassing, or intimidating potential witnesses.

The instant message, sent between juggernaut4000 (Friend's admit-
ted internet pseudonym) and Andfoo (Hartnett's admitted internet
pseudonym) read as follows:

*juggernaut4000*:   i [g]uess ratting out friends comes naturally, huh?

*Andfoo*:   this is andy's mom . . . he is not here now

*juggernaut4000*:   paybacks a bitch, i don't forget

*Andfoo*:   who is this . . .

*Andfoo*:   this is andy's mom . . . who are you

J.A. at 130.

The juggernaut4000 message was received by Hartnett's mother, Mary, on the personal computer that she and her son share. Mrs. Hartnett printed out the exchange and showed it to Andrew a few hours later.

In response to the government's release revocation motion, a hearing was held on December 9, 2002, before a magistrate judge, at the onset of which the government described as follows its agreement with Friend, reached prior to the hearing:

> Basically, Mr. Friend has agreed to admit the allegation in the Government's petition [*i.e.*, the instant message exchange]; the Government, in turn, has agreed, at sentencing, *to not pursue* an acceptance of responsibility issue, an obstruction of justice enhancement, and not to pursue any new charges stemming from this incident.

J.A. 127 (emphasis added).

During the release revocation hearing, Friend admitted to sending the instant message to Andrew Hartnett, but denied that he intended the message as a threat. J.A. 126-42. The magistrate judge denied the government's motion to revoke release. Friend was thereafter released pending sentencing but ordered to surrender his computer and to have no further contact, direct or indirect, with Andrew Hartnett. J.A. 139-40.

Subsequent to the revocation hearing, the probation officer filed an amended presentence report with respect to Friend, recommending a two-level increase for obstruction of justice and eliminating any reduction for acceptance of responsibility, based on the content of the instant message. J.A. 272. Friend timely objected to the probation officer's recommendations. J.A. 226.

Argument and testimony on Friend's objections were heard during a sentencing hearing held on February 11, 2003. At the onset of the hearing, the government informed the court of its agreement with Friend. The government also informed the court that it had subpoenaed Mary and Andrew Hartnett, the recipients of Friend's instant message, to appear as witnesses in the event that the court wished to hear their testimony. J.A. 168.

Ultimately, the court did decide to hear testimony from Mary and Andrew Hartnett, and the government directed that testimony, introducing into evidence the printout of Friend's instant message made by Mary Hartnett. J.A. 174. No reference to the government's agreement with Friend was made during Mary Hartnett's testimony. However, at one point during Andrew Hartnett's testimony, the prosecutor stopped her questioning of Hartnett and said to the court that "I kind of feel that under my agreement, that asking Mr. Hartnett any more questions would be in breach of that agreement." J.A. 177. At this, the court agreed to the government's cessation of questioning and posed questions to the witness directly.

Eventually, the district court found as follows with respect to the instant message sent by Friend:

> The Court finds by a preponderance of the evidence that the defendant did, in fact, threaten his co-defendant. The defendant's choice of pithy language and the first person clearly indicates that he, and not karmic forces [as Friend claimed he meant], is planning on getting even with Andrew Hartnett no matter how long it takes. *The language is threatening on its face and incapable of an innocent construction.*

J.A. 229 (emphasis added), 187. The court also concluded that this threat, made after Friend entered into his plea agreement, warranted

a two-level enhancement for obstruction of justice, and that this enhancement in turn foreclosed any acceptance of responsibility reduction for Friend. The district court sentenced Friend to 97 months in prison.

## II.

On appeal, Friend claims first, that his sentence should be vacated because the government breached its agreement not to pursue obstruction of justice and acceptance of responsibility issues, and, second, that the district court erred in finding that a preponderance of the evidence established that Friend threatened a co-defendant. Therefore, Friend argues, the court incorrectly applied an enhancement for obstruction of justice under U.S.S.G. § 3C1.1 and incorrectly denied him a downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1. We address each argument below.

## III.

We turn first to the question of whether the government breached its agreement not to pursue obstruction of justice and acceptance of responsibility issues, as Friend alleges. Friend claims that, when making representations at the outset of the revocation hearing, the government agreed not to "pursue" obstruction of justice and acceptance of responsibility issues at Friend's sentencing hearing. This agreement, Friend claims, overrides the provision in the plea agreement itself that allowed the government to present relevant evidence to the district court at sentencing. *See* J.A. 55 ¶ 10. Friend argues that he was prejudiced by the government's actions because, absent the breach, Andrew Hartnett and his mother would not have testified, and the district court would not have found the instant message to be a threat, in light of his uncontroverted testimony that he did not intend to threaten Andrew Hartnett.

We review a claim that the government breached an agreement with the defendant "under a bifurcated standard, reviewing the district court's factual findings for clear error, while reviewing the district court's application of principles of contract interpretation *de novo*." *United States* v. *Bowe*, 257 F.3d 336, 342 (4th Cir. 2001).

In this case, however, Friend failed to raise his argument of breach before the district court, despite multiple opportunities during the proceedings to do so. During the sentencing hearing, neither after the government's mention that the Hartnetts were in the hallway pursuant to the government's subpoena, nor during or after the government's questioning of each of the Hartnetts, did Friend object that the government was in breach of its agreement. Friend was equally silent about the agreement after each of the government's several reminders to the court that the government was unable to request an obstruction of justice enhancement per its agreement with Friend, including the government's reminder when it ceased its questioning of Andrew Hartnett that "[it felt] that asking Mr. Hartnett any more questions would be in breach of [its] agreement."

Absent objection to the alleged breach, we review Friend's claim only for plain error. *United States* v. *Brown*, 202 F.3d 691, 698 n.13 (4th Cir. 2000); *see also* Fed. R. Crim. P. 52(b). As recognized by the Supreme Court in *United States* v. *Olano*, 507 U.S. 725 (1993), in order for there to be plain error, there must be "error" that is "plain," and that error must affect the defendant's "substantial rights." *Id.* at 732-36. Even if these conditions are met, we have authority to correct the error, but are not required to do so. *Id.* at 736-37.

We turn first to the question of whether the district court erred in failing to find that the government breached its agreement with Friend not to "pursue" obstruction of justice and acceptance of responsibility issues at Friend's sentencing hearing. The government maintains that its statement that it would not "pursue" obstruction of justice and acceptance of responsibility issues meant that it was limited only in its ability to "recommend a specific position" with regard to obstruction of justice and acceptance of responsibility issues. It contends that it "retained the right to provide information to the district court to enable it to exercise its sentencing discretion," as spelled out in the plea agreement between the government and Friend. J.A. 52.

At first blush, the government's argument that it did not pursue either the obstruction of justice or acceptance of responsibility issues, but, rather, only provided information to the district court to enable the court to reach a sentencing decision, has some appeal. And certainly it might appear that the district court did not plainly err in not

finding otherwise. To be sure, the government did not breach the agreement by introducing evidence of Friend's threat at the revocation hearing, since there was a colorable claim that Friend had breached a condition of release apart from any obstruction of justice. And despite the government's participation in the sentencing hearing itself, the district court found that "[t]he United States really is not taking a position on [the obstruction of justice enhancement]" before finding that the enhancement was justified and that, "as a consequence," a reduction for acceptance of responsibility was not. J.A. 187-88.

However, if "pursue" is construed to mean "to proceed along, follow, or continue with (a specified course, action, plan, etc.)," as defined in *Webster's New World Dictionary*, it is a fair question whether the government's actions at sentencing did in fact cross the line into "pursuit" of the obstruction of justice enhancement and acceptance of responsibility issues. Under this dictionary definition of "pursue," we believe it might well be reasonable to characterize the government's actions as "pursuit" of the obstruction of justice enhancement. The government did not merely subpoena Mary and Andrew Hartnett as witnesses and bring them to court, which might be justified, as the government asserts, as nothing more than "the practice in [the] district." Rather, the government went beyond the mere subpoenaing of witnesses. It introduced the printout of the instant message into evidence during Mary Hartnett's testimony. It questioned both Mary Hartnett and Andrew Hartnett on the instant message sent by Friend; indeed, the government elicited (intentionally or not) the statement from Mary Hartnett that she had seen a "threat" on the screen from Friend's computer, J.A. 173, and the government ceased its questioning of Andrew Hartnett only at the point where it admittedly felt that it was in danger of breaching its agreement. *Id.* at 177. And, in an apparent attempt to establish that Friend did intend to threaten Andrew Hartnett, the government even went so far as to question Friend as to his state of mind at the time that he sent the instant message, asking Friend "why he was mad" at Andrew Hartnett. *Id.* at 184.

The introduction of the instant message into evidence and the development of these particular lines of questioning during the hearing raise doubts as to whether the government actually did stop short

of "pursuing" the issues of obstruction and acceptance of responsibility.

It is not necessary for us to decide whether the government in fact breached its agreement with Friend, however, and we refrain from doing so. For, even assuming both that the government breached the agreement and that this breach should have been obvious to the district court, we are satisfied that Friend has not shown that any error affected his substantial rights; any error committed by the district court did not, in other words, affect the outcome of the district court proceedings. *See Olano*, 507 U.S. at 734; *Bank of Nova Scotia* v. *United States*, 487 U.S. 250, 255-57 (1988).

Friend claims that absent the Hartnetts' testimony, "[t]he language of the instant message by itself clearly would not have been enough to support a finding by a preponderance of the evidence that Cornell Friend threatened a co-defendant." Appellant's Br. at 27. We find this argument unpersuasive, given that the district court stated its belief, in findings, that "*the language on its face in this instant message is threatening*" and that "it [is] self-evident that when you talk about ratting out friends and talking about paybacks and I don't forget that *the language alone is enough for [it] to find that this defendant threatened his co-defendant*." J.A. at 187 (emphases added).

In addition, although Mary Hartnett produced a printout of the instant message during her testimony before the court which was introduced into evidence by the government, it is clear that the text of the message was already part of the court record and therefore was available to the court even had Mrs. Hartnett not been subpoenaed by the government. The transcript of the revocation hearing before the magistrate judge includes the text of the message in full. Consequently, given that the presentence report was subsequently amended to recommend an enhancement in light of the evidence of the threat that was adduced at that hearing, the district court would have been fully aware of the content of the message even absent the appearance of Mrs. Hartnett as a witness. And the fact that the district court heard from the Hartnetts at all is not, by itself, prejudicial, since the district court could properly hear evidence relating to Friend's challenge to the presentence report's recommendation of an obstruction of justice enhancement.

Appellant argues that "the Court's findings were clearly based on the Hartnett's testimony" and that the court was "persuaded by the testimony of Andrew and Mary Hartnett." Reply Br. at 8-9. Our impression is otherwise. From the record, it is evident that factors beyond the witnesses' testimony played a significant role in the court's decision. In particular, the court relied on statements by the magistrate judge and the probation officer's presentence report to support its sentencing decision. Moreover, from the district court's own statements, it is apparent that the court believed that the content of the instant message itself was more than sufficient to support the finding that the message constituted a threat to Hartnett.

Accordingly, we conclude that Friend was not prejudiced, within the meaning of *Olano*, when the government made the Hartnetts available for questioning and then questioned them during the sentencing proceeding.

IV.

We now turn to the question whether the district court clearly erred in finding that a preponderance of the evidence at sentencing established that Friend threatened a co-defendant and therefore incorrectly applied an enhancement for obstruction of justice under U.S.S.G. § 3C1.1 and denied Friend a downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1. On this question, we conclude that the district court's finding in this regard, and its subsequent application of sentencing adjustments, was not error at all, much less clear error.

As discussed above, the district court was unequivocal in its finding that "the language on its face in this instant message is threatening." In further confirmation of the threatening nature of the message, the magistrate judge asked Friend's counsel at the revocation hearing, "[w]hat are you going to tell me, then, that 'paybacks a bitch, i don't forget' means [if it was not a threat]?" and "[l]et me tell you, I've been around the block a few times, was born and raised in Baltimore. In my day, 'paybacks a bitch, i don't forget,' that simply means to me, 'I'm going to get even and I'm not going to forget.'" J.A. 132-33. Counsel had no response to this line of questioning, and Friend himself interjected with "I'm sorry" several times. As well, the probation

officer's amendment of the presentence report to recommend enhancement for obstruction of justice and denial of acceptance of responsibility based on the content of the instant message was also confirmatory of its clearly threatening character.

In view of the record of the revocation hearing as a whole, the recommendation of the presentence report, and the evidence adduced at the sentencing hearing, all recognizing the threatening nature of the language of the instant message on its face, we conclude that there was ample evidence, and certainly a preponderance of evidence, that appellant threatened his co-defendant. The court's application of an enhancement for obstruction of justice and denial of a reduction for acceptance of responsibility were therefore correct.

The judgment of the district court is affirmed.

*AFFIRMED*