**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 08-4837**

UNITED STATES OF AMERICA,

               Plaintiff - Appellee,

      v.

IRA TAYLOR,

               Defendant - Appellant.

Appeal from the United States District Court for the District of Maryland, at Baltimore. Richard D. Bennett, District Judge. (1:07-cr-00587-RDB-1)

Argued: December 4, 2009         Decided: March 2, 2010

Before NIEMEYER, MICHAEL, and GREGORY, Circuit Judges.

Affirmed by unpublished opinion. Judge Niemeyer wrote the opinion, in which Judge Michael and Judge Gregory joined.

**ARGUED:** David Warren Lease, SMITH, LEASE & GOLDSTEIN, LLC, Rockville, Maryland, for Appellant. Jonathan Biran, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee. **ON BRIEF:** Rod J. Rosenstein, United States Attorney, Traci L. Robinson, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

NIEMEYER, Circuit Judge:

Ira Taylor pleaded guilty to a violation of 18 U.S.C. § 922(g)(1) (unlawful possession of a firearm by a convicted felon) pursuant to a plea agreement in which the government stipulated to the Sentencing Guidelines' base offense level and agreed to recommend a sentence within the final advisory Guidelines range, which the presentence report calculated at 30 to 37 months' imprisonment. The district court, however, found as a fact of relevant conduct that Taylor had participated in attempted first-degree murder and, based on that finding, recomputed Taylor's advisory Guidelines range at 120 months' imprisonment. Following Taylor's request for a variance sentence, based on the factors in 18 U.S.C. § 3553(a), the district court sentenced Taylor to 78 months' imprisonment.

On appeal, Taylor argues (1) that the government breached the plea agreement by alluding to and presenting facts of relevant conduct and thereby attempting an "end-run" around its obligations in the plea agreement, and (2) that the district court effectively found Taylor guilty of attempted first-degree murder without submitting the issue to a jury, in violation of his Fifth and Sixth Amendment rights.

We reject Taylor's arguments and affirm.

2

When Taylor was arrested in Baltimore, Maryland, on May 17, 2006, on two state warrants for two separate attempts of first-degree murder and related offenses, he was found to be in possession of a loaded .38 caliber handgun. Because Taylor had previously been convicted of a felony, he was prosecuted in this action for unlawful possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Pursuant to a plea agreement, he pleaded guilty to the firearms charge, expecting to receive a sentence in the range of 30 to 37 months' imprisonment, based on the government's stipulations and agreements.

In the plea agreement, the government stipulated to a base offense level of 20 and a reduction of that offense level of up to 3 levels for acceptance of responsibility, subject to specified conditions not relevant here. The agreement indicated that the parties had made no agreement as to Taylor's criminal history or his criminal history category. The parties agreed that "with respect to the calculation of the advisory guidelines range, no other offense characteristics, Sentencing Guidelines factors, or potential departures or adjustments . . . will be raised or are in dispute," and the government agreed to recommend a sentence within the "final advisory guideline range." But each of the parties reserved the right "to bring to the Court's attention at the time of sentencing . . . all

relevant information concerning the Defendant's background, character and conduct."

The plea agreement included the parties' acknowledgment that neither the court nor the probation office was bound by the plea agreement and that "the Court is under no obligation to accept [the government's] recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above [10 years' imprisonment]."

In the presentence report that followed, the probation officer recommended a base offense level of 20 and a 3-level downward adjustment for acceptance of responsibility, for a total offense level of 17. In view of Taylor's two prior drug convictions, he fell within criminal history Category III, yielding an advisory Guidelines range of 30 to 37 months' imprisonment. The presentence report also reported that Taylor had three juvenile delinquency adjudications involving drugs and guns and six arrests for drug and gun violations, for which he was not prosecuted. Among the six arrests was the arrest on May 17, 2006, made on warrants charging him with two counts of attempted first-degree murder and related offenses. Those charges, however, were not prosecuted by the State and the docket was marked "nolle prosequi."

Taylor filed objections to the presentence report and requested a downward departure under U.S.S.G. § 4A1.3(b) based

4

on his claim that his criminal history Category III over-represented the seriousness of his criminal history and likelihood of recidivism. The government submitted a memorandum in opposition, arguing that, if anything, Taylor's criminal history category under-represented Taylor's dangerousness. The government pointed to the arrest for two attempted first-degree murder charges, which, although not prosecuted, involved a shooting of James Irving on April 2, 2006, and the shooting of Montay Powell on May 1, 2006. The government's memorandum stated that Irving identified Taylor as the man who had shot him, that several eye witnesses identified Taylor as the man who had shot Powell, and that the government intended to present evidence at sentencing to prove Taylor's conduct. In view of this criminal history, the government recommended a sentence at the high end of the 30-37 month Guidelines range.

Taylor replied to the government's memorandum, asserting that the government's argument for a high sentence based on the attempted murders was unfounded. He complained that the government was attempting to try Taylor for crimes that had never been proved against him beyond a reasonable doubt. Taylor concluded by reiterating his request that the court depart downwardly as his criminal history category over-represented his actual criminal history.

At the first sentencing hearing held on May 30, 2008, the district court stated, in light of the conduct alluded to by the government in its sentencing memorandum, that if it determined that Taylor had in fact shot either Irving or Powell, it would consider an upward departure under the Sentencing Guidelines or an increased variance sentence pursuant to 18 U.S.C. § 3553(a). It admonished Taylor that the court could impose a sentence of up to the maximum of 10 years' imprisonment. At Taylor's request, the court granted Taylor a continuance to allow him to prepare a response to the court's observations.

At the second sentencing hearing held on July 24, 2008, the court granted Taylor's motion to exclude evidence about the Powell shooting inasmuch as Powell had, in the interim, been murdered and there would be no direct evidence about the earlier shooting. The court, however, denied Taylor's motion to exclude evidence of the Irving shooting, as the government was prepared to present the testimony of Irving himself, as well as a Baltimore City detective.

After hearing the testimony and Taylor's cross-examination of the witnesses, the court pointed out that the standard for judicial factfinding at sentencing was the preponderance-of-the-evidence standard, even in the aftermath of United States v. Booker, 543 U.S. 220 (2005). After receiving arguments from counsel about the evidence, the district court found that

6

Irving's testimony was credible and that the evidence that Taylor had shot Irving was clear and convincing, a standard that the court applied out of "an abundance of caution." Based on that finding, the court recalculated Taylor's Guidelines' offense level, considering the Irving shooting as relevant conduct and applying cross-references to the attempted murder Guidelines. The recomputation resulted in an offense level of 33, which, when combined with Taylor's criminal history Category III, yielded a Sentencing Guidelines range of 168 to 210 months' imprisonment. Inasmuch as the statutory maximum for the § 922(g)(1) offense was 120 months' imprisonment, the court held that a 120-month sentence was the proper Guidelines range. See U.S.S.G. § 5G1.1(a).

The court then invited arguments from counsel on application of the § 3553 factors and on what sentence was appropriate. The government again argued for a sentence at the high end of the Guidelines range calculated under the original plea agreement's stipulated offense level, i.e., 30 to 37 months' imprisonment. It reiterated that its presentation of facts about the attempted murder of Irving "was only really in response to defense counsel's motion that the criminal history was overrepresented." The government made no other request based on the court's newly recalculated Guidelines range, stating instead, "[W]e just seek a sentence at the high end of

7

the Guidelines and we will leave it at that." Counsel for Taylor requested a sentence at the low end of the original advisory Guidelines range. When the court retorted that the Guidelines range was recalculated to be 120 months' imprisonment, Taylor's counsel proposed that the court sentence Taylor to 60 months' imprisonment.

After considering the Guidelines range, the § 3553(a) factors, and the arguments of counsel, the district court sentenced Taylor to 78 months' imprisonment.

Taylor filed this appeal, contending that the government breached the plea agreement and that the district court denied Taylor his constitutional rights under the Fifth and Sixth Amendments in finding that Taylor shot Irving.

II

Taylor claims that the government breached the plea agreement by alluding to evidence of the two attempted murders in its sentencing memorandum and by presenting evidence on the Irving shooting. He reasons:

> The trial court used this allegation of attempted murder as "relevant conduct" under U.S.S.G. § 1B1.3 to significantly increase Mr. Taylor's offense guideline calculation. Consequently, the Government's introduction of this alleged "relevant conduct" constituted nothing but a "thinly veiled end-run" around the Government's previous agreement to a particular offense guideline calculation in the plea agreement.

8

In support, Taylor cites United States v. Bowe, 257 F.3d 336, 345-46 (4th Cir. 2001), where we held that the defendant's introduction and then withdrawal of evidence prohibited by a plea agreement was "a thinly veiled end-run around" the defendant's obligations in the plea agreement not to introduce such evidence.

Because Taylor did not raise this breach-of-plea agreement claim below, we review it now for plain error. For an appellate court to notice plain error, "[t]here must be an 'error' that is 'plain' and that 'affect[s] substantial rights.' Moreover, Rule 52(b) leaves the decision to correct the forfeited error within the sound discretion of the court of appeals, and the court should not exercise that discretion unless the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" United States v. Olano, 507 U.S. 725, 732 (1993) (quoting United States v. Young, 470 U.S. 1, 15 (1985) (in turn quoting United States v. Atkinson, 297 U.S. 157, 160 (1936))).

Taylor's argument focuses primarily on paragraph 8 of the plea agreement, which obligates the government to abstain from introducing any evidence beyond that stipulated to in the agreement concerning relevant offense conduct and Guidelines factors. But this argument focuses too narrowly, ignoring other provisions of the agreement that authorize both parties to

9

dispute Taylor's criminal history and that, in paragraph 10, authorize the government to offer evidence concerning the defendant's "background, character and conduct." His argument also fails to recognize that the evidence offered by the government was properly responsive to Taylor's own argument that his criminal history Category III over-represented his criminal history.

The plain language of the agreement authorizes the government to introduce evidence both on Taylor's criminal history and on his "background, character and conduct." The government did not, as Taylor contends, introduce the evidence of the Irving shooting to make an argument for a different base offense level from that stipulated to in the agreement or to introduce Guidelines factors forbidden by paragraph 8. Indeed, throughout the proceedings -- even after the court recalculated the Guidelines range at 120 months' imprisonment -- the government continued to recommend that Taylor be sentenced in the range of 30 to 37 months' imprisonment, consistent with its stipulation and agreement.

The government only brought up the fact of the shootings to respond to Taylor's assertion that his criminal history category over-represented his criminal history and his dangerousness. Moreover, Taylor's criminal history was, in any event, fair game for the parties, as they agreed not to stipulate to an

appropriate criminal history or criminal history category. In alluding to the shootings, the government focused specifically on rebutting Taylor's contention about his criminal history, asserting that, if anything, Taylor's criminal history Category III understated his criminal history and dangerousness. Yet, in making this argument, the government continued to recommend a sentence at the top end of the originally calculated Guidelines range of 30 to 37 months' imprisonment.

Finally, even after the district court, on its own initiative, recalculated Taylor's offense level and Guidelines range at 120 months' imprisonment, the government did not recommend a sentence within that range -- as the plea agreement authorized it to do -- but continued to recommend a sentence at the high end of the original guideline range of 30 to 37 months' imprisonment.

Accordingly, we reject Taylor's argument that the government breached the plea agreement. See United States v. Fentress, 792 F.2d 461, 464 (4th Cir. 1986) ("While the government must be held to the promises it made, it will not be bound to those it did not make").

## III

Taylor also makes two interrelated arguments challenging the district court's factfinding during sentencing regarding the

attempted-murder conduct. First, he urges this court to reverse based on the position taken by Justice Scalia in his concurrence in Rita v. United States, 127 S. Ct. 2456, 2478 (2007) (Scalia, J., concurring in part and concurring in the judgment), where he commented that in reviewing a sentence for substantive reasonableness, certain critical facts that are necessary for an in-guidelines sentence to be lawful must be found by a jury beyond a reasonable doubt, as distinguished from other facts that a sentencing court may choose to consider in exercising its discretion, which may be found by a preponderance of the evidence. Taylor thus contends that because his sentence would have been substantively unreasonable but for the judicial factfinding determining that he had committed attempted murder, the fact of the attempted murder needed to be found by a jury beyond a reasonable doubt. He maintains that such "as-applied" challenges to the constitutionality of judicial factfinding were not foreclosed by Rita.

This argument, however, fails to account for numerous post-Booker and post-Rita opinions permitting a sentencing court to consider during sentencing uncharged or even acquitted criminal conduct when the facts of that conduct are found by a preponderance of the evidence. See, e.g., United States v. Grubbs, 585 F.3d 793, 799 (4th Cir. 2009) (holding that, for sentencing purposes, a court may consider uncharged conduct

12

found by a preponderance of the evidence); United States v. Benkahla, 530 F.3d 300, 312 (4th Cir. 2008) (holding that, so long as the Guidelines range is treated as advisory, a sentencing court may consider and find facts by a preponderance of the evidence, provided that those facts do not increase a sentence beyond the statutory maximum). The same reasoning answers Taylor's argument that he had a right to have the attempted murder finding made by a jury beyond a reasonable doubt.

Taylor also makes a more general contention that the district court effectively convicted him of attempted murder without the benefit of a jury and proof beyond a reasonable doubt, in violation of his rights under the Fifth and Sixth Amendments.

This argument, which is similar to his first argument, has been specifically rejected by us numerous times. So long as the district court sentences a defendant within the statutory maximum authorized by the jury findings or guilty plea, the court can consider facts that it finds by a preponderance of the evidence to exercise its discretion in determining the appropriate sentence within that maximum. See, e.g., Benkahla, 530 F.3d. at 512; United States v. Battle, 499 F.3d 315, 322-23 (4th Cir. 2007). Here, Taylor pleaded guilty to a violation of § 922(g)(1), with a maximum sentence of 120 months'

13

imprisonment, and the district court appropriately imposed a sentence of 78 months' imprisonment, within the maximum, based on facts that the court found by a preponderance of the evidence, indeed by clear and convincing evidence.

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED