UNITED STATES of America,
Plaintiff–Appellee,

v.

Sergio Rafael GONZALEZ,
Defendant–Appellant.

No. 92–50268.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 10, 1993.

Decided Oct. 12, 1993.

As Amended Dec. 15, 1993.

As Amended Feb. 25, 1994.

Janice Deaton Hogan, San Diego, California, for the defendant-appellant.

Mary A. Schneider, Assistant United States Attorney, San Diego, California, for the plaintiff-appellee on the brief.

Before: BROWNING, BRIGHT,* and TANG, Circuit Judges.

BRIGHT, Senior Circuit Judge:

Sergio Rafael Gonzalez was an Immigration and Naturalization Service [INS] inspector who accepted bribes to allow what he thought were loads of illegal drugs to pass through the Calexico Port of Entry [the Calexico Port]. Following his arrest, he provided a full confession and subsequently pled guilty to accepting bribes and conspiracy to accept bribes. At sentencing, the district court increased his base offense level for abuse of trust under U.S.S.G. § 3B1.3, and refused to decrease it for acceptance of responsibility under § 3E1.1. Gonzalez appeals, contending the district court erred in granting the increase for abuse of trust and

denying the reduction for acceptance of responsibility. We affirm the increase for abuse of trust, but reverse the denial of the acceptance of responsibility reduction and remand for resentencing in accordance with this opinion.

## I.

In July of 1990, the Federal Bureau of Investigation [FBI] learned from a confidential informant that certain INS and/or Customs Service inspectors at the Calexico Port were permitting shipments of drugs to enter into the United States without inspection.

The FBI began an investigation, having the informant and an undercover FBI agent pose as cocaine suppliers trying to pass a load of drugs through the Calexico Port. Their investigation led them to Josephine Flores, who said she was a Customs inspector and, for $30,000, would allow them to cross the border with a shipment of drugs. After learning she was not an inspector, the FBI agent confronted Flores, who promised she would introduce them to an actual inspector.

On October 15, 1990, in a K–Mart parking lot in Calexico, Flores introduced the informant to Sergio Gonzalez, who worked as an INS inspector stopping and inspecting cars as they went through the Calexico Port. At this meeting, Flores proposed a plan in which her mother, Guadalupe Demara Flores, would serve as lookout at the Calexico Port and use a telephone pager to let Josephine Flores know which lane Gonzalez was working. Josephine Flores and the informant would then drive up and Gonzalez would wave them through. Flores stated Gonzalez's fee was $30,000 and her fee was $10,000.

On October 25, 1990, Flores contacted the undercover agent to arrange for a border crossing later that day. The FBI immediately contacted the informant, who met Flores in Mexico. After receiving a signal from Guadalupe Flores that Gonzalez was working in lane six, the informant, driving an FBI controlled car accompanied by Josephine Flores, approached and then drove through

* Honorable Myron H. Bright, Senior Circuit Judge for the Eighth Circuit, sitting by designation.

Gonzalez's lane. After Gonzalez finished work, he met Flores, the informant, and the FBI agent at the K–Mart parking lot, where the agent told them there were no drugs in the car, and that it had been simply a test run. The FBI agent nevertheless paid Gonzalez $5,000 and Flores $1,000.

On November 16, 1990, the FBI staged another controlled crossing. After learning from Guadalupe Flores which lane Gonzalez was working, the informant and Flores drove the FBI controlled car through Gonzalez's lane. Gonzalez waved the car through without inspection, and, after work, met the FBI agent and Flores at the K–Mart parking lot. After Gonzalez accepted $30,000 and four ounces of cocaine and Flores $10,000, FBI agents arrested Gonzalez, Flores and Flores' mother.

Executing a search warrant at Gonzalez's home, agents found personal use amounts of cocaine and marijuana, drug paraphernalia, scales, and numerous firearms. Gonzalez subsequently admitted to committing bribery and conspiracy to smuggle controlled substances.

On November 28, 1990, a grand jury indicted Gonzalez, charging him with: (1) conspiracy to import cocaine; (2) accepting bribes and conspiracy to accept bribes; (3) possession of cocaine with intent to distribute; and (4) possession of firearms by a drug user.

On November 29, 1990, Gonzalez entered a plea of not guilty. On October 29, 1991, the parties filed a plea agreement in which Gonzalez agreed to plead guilty to the bribery charges in exchange for an agreement by the prosecution to dismiss the other counts.

In the Presentence Report [PSR], the probation officer determined that Gonzalez's criminal history category was I and that his base offense level was 28. Because Gonzalez had shown remorse for his actions, the probation officer recommended a downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1, decreasing Gonzalez's base offense level by two points to 26.

The prosecution objected to the PSR, arguing against granting the acceptance of responsibility reduction because Gonzalez had indicated the only reason he had committed the crimes was to help Flores. The probation officer disagreed, maintaining Gonzalez's motive for committing the crime was irrelevant in determining whether to grant the reduction.

At the sentencing hearing, the probation officer noted that the only area of disagreement between the probation department and the government with respect to Gonzalez's sentence concerned whether Gonzalez was entitled to the acceptance of responsibility adjustment. In proceeding to calculate Gonzalez's sentence under the guidelines, the district court first heard arguments as to whether his base offense level should be increased for the abuse of trust adjustment under U.S.S.G. § 3B1.3. Gonzalez argued the two-point increase should not be given because it was already included in the bribery offenses with which he was charged.

The district court then gave what it stated was a "tentative ruling," indicating it was prepared to increase Gonzalez's base offense level for abuse of trust and grant the acceptance of responsibility adjustment. (Sent. tr. of Gonzalez, at 15.) The judge added, however, "[d]o you have anything you want to say about that?" (*Id.* at 15.) The government then proceeded to oppose the two-level reduction for acceptance of responsibility, arguing Gonzalez's only statement concerning why he had committed the crime was that Josephine Flores had stated her life was in danger.

The district court ultimately decided to increase the base offense level for abuse of trust and deny the reduction for acceptance of responsibility. After calculating his adjusted offense level at 30 and his guideline range at 97–121 months, the district court sentenced Gonzalez to 104 months.

Gonzalez filed a timely notice of appeal. The government subsequently moved this court to dismiss the appeal, arguing Gonzalez had waived his right to appeal under the negotiated terms of the plea agreement.

This court ultimately denied the motion,[1] leading Gonzalez to file this appeal.

## II.

The government first reiterates its contention that we should dismiss this case because Gonzalez, in his plea agreement, waived his right to appeal.

Gonzalez's plea agreement contains the following waiver of appeal:

> 11. Defendant Gonzalez further agrees that, although he is free to argue for whatever sentence he believes is appropriate, he will not appeal any sentence imposed at or below the U.S.S.G. range determined to apply by the Probation Department or the District Court.

(Plea Agreement, 10/29/91, at ¶ 11.) Gonzalez contends a plain and literal reading of this provision shows that it proscribes only the appeal of a sentence imposed at or below the sentencing range, not an appeal of a sentence that is "*above* the range determined to apply by the Probation Department *or* the District Court." (Appellant's Br., at 9.) Gonzalez argues that because the district court ultimately imposed a sentence exceeding the Probation Department's recommended range, he may appeal.

Gonzalez also contends the government breached paragraph nine of the plea agreement by opposing a two-level reduction for his acceptance of responsibility after the sentencing judge had already stated he intended to grant the adjustment. Paragraph nine of the plea agreement provides:

> 9. The Government agrees that if the Court finds that defendant Gonzalez accepts responsibility for his offense, the Government will not oppose a two-level reduction pursuant to U.S.S.G. § 3E1.1.

(Plea Agreement, 10/29/91, at ¶ 9.) Gonzalez maintains the government's breach here releases him from his promise in the agreement not to appeal.

The government counters that although "paragraph 11 of the plea agreement is not a model of clarity and, standing alone, might be considered ambiguous," it must be read within the context of the entire plea agreement and the statements and actions of Gonzalez and his attorney. (Appellee's Br., at 9.)

The government also argues: (1) the district court's initial statement indicating it was granting the acceptance of responsibility reduction was only a tentative finding; (2) the government was not otherwise precluded under the plea agreement from informing the district court of pertinent facts to assist it in making its determination; and (3) its promise in the plea agreement not to oppose the adjustment simply constituted a waiver of the government's prerogative to appeal if it ultimately disagreed with the district court's findings. The government maintains it objected to the acceptance of responsibility reduction because Gonzalez had lied and misled the district court as to why he committed the crimes.

■ This court reviews the waiver of a statutory right to appeal *de novo. United States v. Bolinger*, 940 F.2d 478, 479 (9th Cir.1991).

Gonzalez's waiver of his right to appeal in paragraph 11 of the agreement is ambiguous. On the one hand, the paragraph can be construed to mean Gonzalez agreed he would not appeal a sentence within the range determined by either the Probation Department or the district court. On the other hand, the paragraph may be interpreted to mean that although the agreement precludes Gonzalez from appealing a sentence "at or below the U.S.S.G. range" as determined "by the Probation Department or the District Court," nothing precludes him from appealing the adoption of a sentence above the range established by one entity but within the range established by the other. That the Probation Department "recommends" rather than "determines" sentences only further muddles the meaning of this paragraph.

■ Moreover, in our view, the government's actions in opposing the acceptance of responsibility reduction constituted a breach

---

1. *United States v. Gonzalez,* 981 F.2d 1037 (9th Cir.1992) (order denying appellee's motion to dismiss).

of the plea agreement. Following the recommendation of the Probation Department, the sentencing judge indicated he was inclined to grant the § 3E1.1 reduction. The government then proceeded to argue strenuously against granting the reduction on the grounds that Gonzalez had misrepresented the reasons why he committed the bribery.

The question is whether the sentencing judge's tentative ruling to grant the adjustment constitutes a finding by the district court under paragraph 9 of the plea agreement that Gonzalez accepted responsibility for his offense. In our view, it does.

Had the judge expressed no view with respect to the adjustment, then arguably the prosecutor may have voiced concern over the possibility of granting it without risk of breaching the plea agreement. But this was not the case. The district court had expressly indicated its willingness and desire to grant the adjustment. In asking the government, "[d]o you have anything you want to say about that?", in our opinion, the district court triggered precisely the scenario contemplated by paragraph 9.

To suggest that because the judge had stated his ruling was tentative, the government somehow had a window of opportunity in which to oppose the adjustment without abridging the agreement, leads to an illogical interpretation of paragraph 9. Under such a reading, the government would not be duty bound to refrain from objecting to the adjustment until after the district court had unequivocally granted Gonzalez the two-level reduction, at which point any objection by the government essentially would be meaningless.

■ The government made a conscious and deliberate decision to change its earlier position and oppose granting the adjustment. In our view, the government's actions constitute a breach of its agreement with Gonzalez.

Citing our ruling in *United States v. Flores–Payon*, 942 F.2d 556 (9th Cir.1991), the government maintains that Gonzalez's failure to object to the government's alleged breach of the plea agreement at the sentencing hearing procedurally bars him from raising it on appeal now. We note this argument

was the bedrock of Judge Kozinski's dissent in the earlier panel decision denying the government's motion to dismiss.

We reiterated in *Flores–Payon* that, absent certain exceptions, a defendant cannot raise claims on appeal which he failed to raise before the district court. Specifically in that case, the defendant attempted to argue that the district court sentenced him in excess of the sentence specified in his plea agreement, and that the prosecutor engaged in misconduct by recommending a sentence beyond the sentence in the plea agreement. *Flores–Payon*, 942 F.2d at 558. *See also United States v. Edwards*, 800 F.2d 878, 884 (9th Cir.1986) (defendant waived appeal of claim that he had an "implied plea bargain right" to be sentenced by same judge who accepted his plea, by failing to raise the issue before the district court).

In this case, in contrast, Gonzalez is not appealing the government's breach of the plea agreement. Instead, he argues that the government's breach releases him from his agreement not to appeal his sentence. Gonzalez contends that he is entitled to a reduction for acceptance of responsibility because he has expressed remorse and contrition for his crime, not because the government argued, in violation of the plea agreement, that he was not entitled to that reduction.

Gonzalez's failure to raise the breach of paragraph 9 in district court would prevent him from arguing here that he is entitled to a remedy for the breach, such as being resentenced without the government opposing the acceptance of responsibility adjustment. *Flores–Payon*, 942 F.2d at 558. Gonzalez's inaction, however, has no bearing on whether the government did in fact breach the agreement for purposes of determining whether Gonzalez may bring this appeal at all. These are two separate and distinct issues. Where the sole purpose of asserting a plea agreement breach is to avoid a waiver of the right to appeal, it would be meaningless to make such an argument below for the simple reason that district courts need not concern themselves with a defendant's appeal beyond informing him of the right. *See* Fed. R.Crim.P. 32(a)(2). We recognize the district court's role as factfinder in cases of

alleged plea agreement breaches, *see Flores–Payon*, 942 F.2d at 558, 560, and in appropriate instances it will be necessary to remand a case for a determination by the district court whether the government breached the plea agreement. *Cf. Gonzalez*, 981 F.2d at 1043 (Kozinski, J., dissenting). In the present case, however, the breach is clear. By opposing the acceptance of responsibility adjustment, the government by its breach of the agreement released Gonzalez from his promise in paragraph 11 not to appeal. Once released from the bar of the appeal waiver, Gonzalez may raise any claim relating to the sentence, except a contention that first should have been presented to the district court. Here, Gonzalez raises a proper claim on appeal, that his showing of contriteness entitles him to the two-point reduction—the same claim made in the district court which the trial judge rejected.

We turn now to the merits of Gonzalez's appeal.

### III.

Gonzalez contends the district court erred in denying him a downward adjustment for acceptance of responsibility under § 3E1.1 because it incorrectly ruled Gonzalez was required to state his reasons for committing the crime. He argues he was required only to show remorse and recognize his role in the commission of the crime, both of which he asserts he did.

Gonzalez also argues that application note 3 to § 3E1.1 (1991) creates a presumption in favor of granting the reduction so long as "the defendant pleads guilty before the start of trial and truthfully admits 'involvement in the offense and related conduct.'" (Appellant's Br., at 18 n. 4.)

The government counters that Gonzalez lied both to the Probation Department and the district court by telling them he committed the crime because Josephine Flores "had repeatedly asked him to assist her and that she would lose her life if he did not." (Appellee's Br., at 20.) It asserts Gonzalez's conduct of lying belies any words of remorse or regret and otherwise served as the basis of the district court's ultimate determination

that Gonzalez never fully accepted responsibility for his crimes.

The government further contends Gonzalez's reference to application note 3 to § 3E1.1 ignores the final part of the note, stating that evidence of a defendant's guilty plea before trial and truthful admission of participation in the offense, in effect, may be disregarded if the defendant's conduct is otherwise inconsistent with his acceptance of responsibility.

■ Whether, for purposes of U.S.S.G. § 3E1.1, a person has accepted responsibility for a crime is a factual determination that this court will not disturb unless the district court's decision is without foundation. *United States v. Rosales*, 917 F.2d 1220, 1222 (9th Cir.1990) (quoting *United States v. Smith*, 905 F.2d 1296, 1301 (9th Cir.1990)).

Section 3E1.1(a) of the Guidelines provides: "If the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct, reduce the offense level by 2 levels." Application notes to this section indicate it is appropriate to consider whether the defendant made a "voluntary and truthful admission to authorities of involvement in the offense," U.S.S.G. § 3E1.1, comment. (n. 1(c)), and "the timeliness of the defendant's conduct in manifesting the acceptance of responsibility." *Id.*, comment. (n. 1(h)). Application note 3 states that an "[e]ntry of a plea of guilty prior to the commencement of trial combined with truthful admission of involvement in the offense and related conduct will constitute significant evidence of acceptance of responsibility." *Id.*, comment. (n. 3).

To qualify for this reduction, a defendant must demonstrate "some manifestation of 'sincere contrition' ... or 'sincere remorse.'" *United States v. Ramos*, 923 F.2d 1346, 1360 (9th Cir.1991) (quoting U.S.S.G. § 3E1.1, comment. (n. 2), (backg'd.)).

The sentencing judge's decision to deny Gonzalez the reduction is set forth below:

THE COURT: *The prosecutor points out a very good point, he is not willing to accept full responsibility, he is now saying something, apparently, that he never said in the beginning the reason he did it.*

MR. CHAVEZ (Gonzalez's attorney): My belief is that the acceptance of responsibility is he admits he did it at an early stage of the criminal proceedings. He is accepting full fairness of the crime that he is charged with.

THE COURT: I am afraid, Mr. Chavez, I am going to deny him both of those. I won't deduct two points for acceptance of responsibility.

(Sent. tr. of Gonzalez, at 17–18) (emphasis added). The "now saying something, apparently, that he never said" to which the district court refers relates to Gonzalez's statement to the probation officer that the reason he committed the crimes was to help Josephine Flores, who had told him that she would otherwise lose her life. The government argued, and the district court in effect agreed, that because he had never said this before, he was lying and thus not fully accepting responsibility for his crimes.

In our opinion, the district court erred in denying Gonzalez the adjustment.[2] Under § 3E1.1, Gonzalez was required to recognize and affirmatively accept personal responsibility for his criminal conduct. The record shows he did. He fully admitted his involvement in the crime in his post-arrest statements, during his discussions with the probation officer, and in open court at sentencing. By making a full and truthful confession of his crimes immediately after his arrest, Gonzalez satisfied the timely, voluntary and truthful admission to authorities concerns of Application Notes 1(c) and (g).

Moreover, Gonzalez's statement to the probation officer that "he feels bad for what he has done, and sorry for the pain he has caused his coworkers, his family, and the community at large" (PSR, at 6) demonstrates contrition and remorse. *See Ramos,* 923 F.2d at 1360.

[redacted] Neither § 3E1.1 nor any cases we have found state or otherwise indicate that a defendant's claimed reason or motivation for committing a crime is a dispositive factor in determining whether to grant the adjustment unless the claim was intended as a defense to liability for the charged offense. Even if it were established that Gonzalez at some point in the proceedings lied about why he committed the crimes, this lack of candor, as the probation officer in the Addendum to the PSR points out, should play no part in the district court's § 3E1.1 determination where the explanation was not made to avoid criminal liability.[3]

Accordingly, the district court erred in refusing to grant Gonzalez the downward adjustment.

## IV.

[redacted] Gonzalez further contends the district court erred in granting an enhancement for abuse of trust under § 3B1.3 because the abuse of trust concern is included in the underlying offense of bribing a public official, to which he pled guilty. He argues granting the enhancement constitutes double counting otherwise proscribed by the Guidelines.

The government contends the guideline for bribery provides an alternate means of determining the base offense level depending upon the relative seriousness of the crime, such that a border inspector who knowingly waves

2. We here apply clear error as our standard of review. *See, e.g., United States v. Innie,* 7 F.3d 840, 847–48 (9th Cir.1993); *United States v. Aichele,* 941 F.2d 761, 767 (9th Cir.1991).

3. *United States v. Smith,* 905 F.2d 1296 (9th Cir.1990) is not to the contrary but is distinguishable.

The defendant Smith denied responsibility for the crime, claiming a defense of coercion, "that he did not participate in the robbery of his own desire, but did so out of fear for Banks [co-defendant]." *Id.,* at 1302. This claim indicated Smith did not accept responsibility for his offense.

To the contrary, Gonzalez fully accepted responsibility for his conduct. The prosecutor, however, zealously seized on a single, additional comment of Gonzalez to the probation officer, of many made, that he wanted to help Flores. In doing so, the prosecutor incorrectly tied acceptance of responsibility to motivation, indicating that Gonzalez should not receive such credit unless Gonzalez confessed to greed as his sole motive. Setting aside the fact that this demand was part of the prosecutor's breach of the plea agreement, Gonzalez's statement did not claim a defense to the charge and so was irrelevant.

Thus, in *Gonzalez,* denial of the two point reduction is without adequate foundation whereas such foundation appeared in *Smith.*

through what he believes to be a load of drugs receives a higher sentence than a government employee who illegally distributes a social security card. It maintains that Gonzalez's reading of § 3B1.3—that it can never apply to bribery—has been rejected in principle by the First Circuit in *United States v. Butt*, 955 F.2d 77 (1st Cir.1992) (RICO violations, extortions by police officer, do not include abuse of trust) and directly by the Eleventh Circuit in *United States v. Clark*, 989 F.2d 447, 449 (11th Cir.1993).

The district court sentenced Gonzalez pursuant to § 2C1.1(c)(1), which, under application note 3, specifically allows application of § 3B1.3. We cannot say that the district court erred in granting the abuse of trust enhancement under the facts in this case. Accordingly, we affirm this part of Gonzalez's sentence.

**AFFIRMED IN PART, REVERSED AND REMANDED IN PART.**