101 F.3d 685
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
UNITED STATES of America, Appellee,
v.
George A. PETKASH; Edward Kenefick; Linus Beaulieu, Defendants,
Thomas PETKASH, Perry Petkash, Defendants-Appellants.
 Nos. 95-1526(L), 95-1550.
 United States Court of Appeals, Second Circuit.
 May 29, 1996.
 
 Appearing for Appellants Thomas Petkash: Bruce R. Bryan, Syracuse, New York. Perry Petkash: Paul G. Carey, Syracuse, New York.
 Appearing for Appellee: Miroslav Lovric, Assistant United States Attorney, Binghamton, New York.
 N.D.N.Y.
 AFFIRMED.
 This cause came to be heard on the transcript of record from the United States District Court for the Northern District of New York and was argued.
 ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court is hereby affirmed.
 Thomas Petkash appeals from the sentence of ninety-seven months imprisonment, four years supervised release, forfeiture of thirty thousand dollars in unlawful proceeds, and a special assessment of one hundred fifty dollars entered after a plea of guilty to conspiracy to possess with intent to distribute and to distribute marijuana in violation of 21 U.S.C. § 846, filing a false income tax return in violation of 26 U.S.C. § 7206(1), and unlawful receipt of a firearm in violation of 18 U.S.C. § 922(a)(6). Perry Petkash appeals from the sentence of ninety-seven months imprisonment, four years supervised release, forfeiture of thirty thousand dollars in unlawful proceeds, and a special assessment of one hundred fifty dollars entered after a plea of guilty to conspiracy to possess with intent to distribute and to distribute marijuana in violation of 21 U.S.C. § 846 and to filing a false income tax return in violation of 26 U.S.C. § 7206(1).
 On appeal, the Petkashes argue four points related to their sentencing before Judge McAvoy. First, each argues that the government breached their plea agreements by seeking obstruction of justice enhancements. They claim that they are entitled to specific performance of the plea agreements, which included no such enhancements. Second, each argues that the district court should have granted an additional one point acceptance of responsibility deduction for timely informing the government of his intention to plead guilty. Third, each of the Petkashes argues that the district court erroneously assessed a two point penalty for obstruction of justice. Finally, both Petkashes allege ineffective assistance of counsel at sentencing.
 The government argues that the defendants have waived their right to appeal because the defendants failed to raise the issues concerning the plea agreement at sentencing. We disagree. A defendant may raise the prosecution's breach of a plea agreement on appeal notwithstanding a failure to raise that issue at the sentencing proceeding. See, e.g., United States v. Salcido-Contreras, 990 F.2d 51, 52 (2d Cir.), cert. denied, 113 S.Ct. 3060 (1993); Paradiso v. United States, 689 F.2d 28, 30 (2d Cir.1982), cert. denied, 459 U.S. 1116 (1983); see also United States v. Gonzales-Perdomo, 980 F.2d 13, 15 (1st Cir.1992) (discussing split of authority on this issue). The government suggests in the alternative that the specific terms of the Petkashes' plea agreements bar an appeal. However, if the government breached the plea agreements, the Petkashes may appeal notwithstanding the waiver of appeal clauses of the plea agreements. See, e.g., United States v. Gonzalez, 16 F.3d 985, 990 (9th Cir.1994) ("By opposing the acceptance of responsibility adjustment, the government by its breach of the agreement released [defendant] from his promise ... not to appeal"). The enforceability of the waiver provisions depends, therefore, on whether the government breached the plea agreements.
 We find no merit in appellants' suggestion that the government breached the plea agreements by seeking obstruction of justice enhancements pursuant to U.S.S.G. § 3C1.1 at sentencing. The Petkashes argue that the government knew of their obstructionist conduct before entering into the plea agreements and that, therefore, the government is estopped from seeking the obstruction of justice enhancements. They insist that the government should, instead, be required to perform as provided by the agreement. We disagree. Appellants, not the government, breached the plea agreements.
 It is apparent that the government was aware when it entered into the plea agreements that appellants had not been especially forthcoming or truthful. Had the government requested an obstruction of justice enhancement based on this pre-plea conduct alone, we might be sympathetic to appellants' argument. However, the pre-plea conduct is not the whole story. The Petkashes explicitly agreed to provide "complete, truthful, and accurate information and testimony" and not "to protect any person who has been involved in criminal activity." No matter what the government knew of their dissembling before the plea agreements, therefore, appellants assumed an affirmative obligation from that point forward to provide truthful and comprehensive information.
 Without a doubt, Perry Petkash ignored this obligation. Edward Kenefick testified at sentencing that even after signing his plea agreement, Perry Petkash actively implored accomplices to conceal information concerning other participants in their drug ring. Under such circumstances, the prosecution was entitled to seek, and the district court entitled to impose, a two point enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1. "A defendant who materially breaches a plea agreement may not claim its benefits.... [The defendant] breached material terms of the plea agreement, and would therefore have no proper objection even if the Government had gone beyond what the agreement permitted." United States v. Merritt, 988 F.2d 1298, 1313-14 (2d Cir.) (citations omitted), cert. denied, 508 U.S. 961 (1993).
 It does not appear that Thomas Petkash actively sought to have others lie to the government after signing the plea agreement. There is thus an argument to be made that Thomas Petkash "cooperated" within the meaning of his plea agreement, and that the government breached that agreement when it sought an obstruction of justice enhancement at sentencing. However, paragraph thirty-three of his plea agreement specifically provides that
 
 
 1
 The defendant agrees that the determination as to whether his statements and/or testimony is truthful and complete shall be within the sole discretion of the United States Attorney. If, in the judgment of the United States Attorney for the Northern District of New York, the defendant violates the terms of this Plea and Cooperation Agreement, the defendant understands and agrees that:....
 
 
 2
 D. Defendant shall be sentenced without regard to the limitations set forth in this Agreement.
 
 
 3
 The determination as to whether Thomas Petkash failed to cooperate, and whether the government should seek a sentence outside the plea agreement's range is thus vested in the first instance in the government. Of course, "where the explicit terms of a cooperation agreement leave the acceptance of the defendant's performance to the sole discretion of the prosecutor, that discretion is limited by the requirement that it be exercised fairly and in good faith," United States v. Khan, 920 F.2d 1100, 1105 (2d Cir.1990), cert. denied, 499 U.S. 969 (1991); see also United States v. Leonard, 50 F.3d 1152, 1157 (2d Cir.1995), but on this record, we see no reason to question the government's motives. Robert Johnson testified at sentencing that until shortly before entering into the plea agreement, Thomas Petkash requested accomplices to conceal other members of his drug ring from the government. Petkash has offered nothing suggesting that, after signing the plea agreement, he endeavored to undo his past obstruction, to put the government on notice that others might be lying at his request, or otherwise to provide "complete, truthful, and accurate information and testimony." The government could, therefore, "without regard to the limitations" set out in the agreement, bring to the district court's attention the evidence of Thomas Petkash's pre-plea obstruction of justice. Finally, in light of Robert Johnson's testimony, Petkash's argument that the district court lacked grounds to impose the Section 3C1.1 enhancement is meritless.
 
 
 4
 Because we have concluded that the government did not breach the plea agreements, and the Petkashes have specifically advised us that they do not want their pleas vacated, the waiver provisions are enforceable. The specific terms of the plea agreements bar appellants' arguments regarding acceptance of responsibility and the factual basis for the obstruction enhancement. The plea agreements each provide that the defendant
 
 
 5
 waives the right to appeal the sentence in this case so long as that sentence is within the Sentencing Guidelines range, whatever range the Court determines defendant's conduct falls within. Therefore, defendant only reserves the right to appeal his sentence if the court should depart upward.
 
 
 6
 The Petkashes, realizing the importance of the agreements' waiver language to their appeals, attempt to characterize the language of this provision as ambiguous, suggesting that they might have understood the clause to mean that they were permitted to appeal sentences deviating from the guidelines calculation set out in paragraph 17 of each agreement. This argument is frivolous. Even assuming that such confusion was within the realm of possibility--and it is difficult to do so--paragraph 17 of each agreement expressly states that "defendant understands that the provisions of paragraph 17 are not binding on the Court and the Court may conclude that defendant's relevant conduct and Sentencing Guidelines offense level are greater than that which defendant and the government have agreed upon." In light of this language, there is no ambiguity in the provision that the defendants "waive[ ] the right to appeal the sentence in this case so long as that sentence is within the Sentencing Guidelines range, whatever range the Court determines defendant's conduct falls within."
 
 
 7
 Finally, appellants argue that they had ineffective assistance of counsel because sentencing counsel failed to request the court to depart downward sua sponte under U.S.S.G. § 5K2.0, failed to argue that the government should be compelled under the plea agreement to move for a "substantial assistance" departure under U.S.S.G. § 5K1.1, failed to request that the court depart downward based on extraordinary family circumstances, and failed to request that the court depart downward because of the particular defendant's progress toward rehabilitation for his drug use. We address these claims notwithstanding the waiver provision of the plea agreement because some of the arguments may relate to the negotiation of the agreements as well as arguments made at sentencing.
 
 
 8
 In order to establish ineffective assistance of counsel, an appellant must show that "counsel's representation fell below an objective standard of reasonableness" under "prevailing professional norms." Strickland v. Washington, 466 U.S. 668, 687-90 (1984), and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694. See also United States v. Hurtado, 47 F.3d 577, 583 (2d Cir.), cert. denied, 116 S.Ct. 266 (1995). We cannot agree with the Petkashes that failure to request any of the suggested departures fell below an objective standard of reasonableness under prevailing professional norms. Indeed, such requests by either defendant's counsel would themselves have risked violating the plea agreements and excusing the government from its obligations under those agreements. Nor can we say, based on this record, that if either of appellants' sentencing counsel had requested these departures, there is any reasonable possibility that the result of the proceeding would have been different.
 
 
 9
 Affirmed.