**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**November 28, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

　　　　Plaintiff - Appellee,

　　v.

WILLIAM YOUNG, also known as
Smurf,

　　　　Defendant - Appellant.

No. 05-3238

D. Kansas

(D.C. No. 03-CR-20116-KHV)

**ORDER AND JUDGMENT**[*]

Before **KELLY, ANDERSON,** and **BEAM,**[**] Circuit Judges.

In this direct criminal appeal, William Young challenges both the sentence

imposed following his plea of guilty and the enforceability of a waiver of appeal

contained in his plea agreement. Young argues that he entered into the agreement

because of misinformation provided to him by his prior attorney and that the government

breached one of the terms of the sentencing accord. Also pending is the government's

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

[**]The Honorable C. Arlen Beam, United States Circuit Judge, Eighth Circuit Court
of Appeals, sitting by designation.

motion for enforcement of the waiver agreement, filed after Young's appeal. Having

jurisdiction under 28 U.S.C. § 1291, we grant the government's motion and dismiss the

appeal.

I.      BACKGROUND

Young entered a plea of guilty to one count of conspiracy to distribute and possess

with intent to distribute five grams or more of cocaine base. The plea agreement, dated

December 16, 2003, contains a broad waiver of appellate rights as well as a concession by

Young that he entered into the agreement knowingly and voluntarily. But, as part of the

undertaking, the government agreed to "not request an upward departure from the

applicable sentencing guideline range if the defendant agrees not to request a downward

departure."

In the presentence investigation report (PSR) and again at the March 8, 2004,

sentencing hearing, Young challenged the PSR on two grounds: the inclusion of an

adjustment for Young's leadership role in the conspiracy and his status as a career

offender based, in part, on a state court conviction for attempted aggravated battery, an

offense for which he received a suspended sentence of eleven months' incarceration. At

the time Young entered into the plea agreement, his counsel advised him that his base

offense level would most likely be 26. The district court calculated a final offense level

of 29 and on March 11, 2004, sentenced Young at the low end of the guideline range, 151

months' imprisonment. Young did not file a timely appeal from the March 2004

judgment.

On August 6, 2004, Young filed a pro se motion seeking new counsel and leave to assert an appeal out of time, which motion was denied by the district court on September 7, 2004. On January 25, 2005, Young filed a pro se motion to vacate his sentence under 28 U.S.C. § 2255, claiming ineffective assistance of counsel based upon his former attorney's failure to timely appeal from the March 2004 sentence as allegedly directed by Young.[1] The government responded to the motion to vacate on January 28, 2005, with a motion to enforce the plea agreement. On April 4, 2005, the district court "overruled" the government's motion to enforce the plea agreement and set the matter for an evidentiary hearing. Ultimately, on June 10, 2005, the trial court granted Young's section 2255 motion, vacated the March 11, 2004, judgment and directed the clerk of court to reenter judgment on the same conditions as the previous judgment so that Young could file a timely notice of appeal. This action, then, is a direct appeal from the June 2005 judgment and raises Young's substantive claims in a timely fashion.

Four months after Young filed his timely notice of appeal, the government again filed a motion to enforce the plea agreement, which motion we consider today. Young responds to the government's motion to enforce, contending that the government waived its opportunity to file this motion because it did not appeal when, on April 4, 2005, the district court denied the earlier motion to enforce and set the matter for an evidentiary

_____

[1]As relevant, Young claimed his counsel was ineffective for failing to appeal based upon (1) the government's alleged breach of the plea agreement at sentencing, (2) the involuntariness of Young's plea, and (3) the insufficiency of evidence supporting Young's ultimate sentence. Young dropped the second and third grounds at the June 6, 2005, evidentiary hearing.

hearing. Young further argues that should we decide to address the government's motion to enforce on the merits, the filing was untimely and the government breached the plea agreement.

## II.    DISCUSSION

### A.    Government's Alleged Waiver

As earlier noted, the government first sought to enforce the plea agreement shortly after Young filed his pro se section 2255 motion in January 2005. The district court overruled that motion in its April 2005 order. The district court correctly noted in this April holding that Young's waiver of the right to appeal or collaterally attack his sentence did not preclude Young's argument that his prior counsel was ineffective. Because there was little information on whether Young's lawyer specifically disregarded Young's instructions to appeal and on whether defects in the 2004 sentencing proceeding occurred, the district court set the matter for an evidentiary hearing.

The district court's April 4, 2005, denial of the government's first motion to enforce the plea agreement merely set the stage for an evidentiary hearing on Young's section 2255 motion.

Following the evidentiary hearing, the district court sustained Young's section 2255 request and, in that same order, directed the clerk to reenter judgment so that Young could file a direct appeal. The district court addressed nothing else.

The government's failure to appeal the district court's April 4, 2005, order did not constitute a waiver of any of the arguments it now raises in its motion for enforcement of

-4-

the plea agreement. Further, because the district court granted Young's requested relief and immediately vacated and reentered his sentence, which action was followed by Young's timely appeal, the government exercised its only opportunity to file its motion to enforce with this court.[2] Indeed, it became the government's obligation to invoke the waiver agreement in this court. United States v. Calderon, 428 F.3d 928, 930-31 (10th Cir. 2005).    **B.    Government's Alleged Breach**

Having determined that the government did not waive its right to file a motion to enforce the plea agreement, we next address whether the government breached the agreement. If the government indeed breached, Young is no longer bound by the contract. 17 Am. Jur. 2d Contracts §§ 606, 684 (2004).

But, we have not yet determined in this circuit whether a party has the right to pursue an alleged breach of a plea contract in the face of a wavier of appeal. We now join our sister circuits in holding that a defendant's waiver of the right to appeal or collaterally attack his sentence does not preclude an appellate argument that the

---

[2]The fact that the government filed the instant motion four months after Young's direct appeal does not affect our current review. Circuit Rule 27.2(A) provides that the motion to enforce the plea agreement must be filed within 15 days after the notice of appeal is filed. However, we have been lenient in allowing these "motions to enforce," whether or not the party seeking to enforce the agreement strictly follows the local requirements for doing so. United States v. Clayton, 416 F.3d 1236, 1238 (10th Cir. 2005) (refusing to hold the government to the 15-day period for filing a motion to enforce a plea agreement when it was raised in a brief, not a motion, and at a point well beyond the Rule 27.2(A) 15-day time period), cert. denied, 126 S. Ct. 1110 (2006). Rule 27.2(A) allows a motion to be filed later upon a showing of good cause. The government has explained that it needed to wait until it received the sentencing transcript before it could determine whether or not the plea agreement had been breached. This sufficiently explains any delay.

government breached the plea accord. United States v. Bowe, 257 F.3d 336, 342 (4th Cir. 2001); United States v. Rosa, 123 F.3d 94, 98 (2d Cir. 1997); United States v. Gonzalez, 16 F.3d 985, 988-90 (9th Cir. 1993). Practically, this preserves the public policy constraints that bear upon the enforcement of other kinds of contracts. Rosa, 123 F.3d at 98. To determine whether the government breached this plea agreement, we examine the nature of the government's promise and evaluate the promise in light of Young's reasonable understanding of the promise at the time the guilty plea was entered. United States v. Peterson, 225 F.3d 1167, 1170-71 (10th Cir. 2000). "Principles of general contract law guide our analysis of the government's obligations under the agreement." Id. at 1171. Whether the conduct at issue violated the plea agreement is a question of law reviewed de novo. Id. at 1170.

Young's plea contract contains an agreement by the government to recommend a sentence at the low end of the applicable guideline range and an agreement not to request an upward departure from the applicable range if Young, in turn, agreed not to request a downward departure. The PSR determined that Young was a leader in the conspiracy and that he was a career offender. Under sentencing guideline terminology, this is the stuff of enhancement or adjustment, not departure.

Young argues that at the time of the plea agreement, he was not aware of, nor was he instructed on, the distinction between an enhancement and a departure. His reasonable understanding, he says, was that the government would do nothing to request a higher sentence than the one contemplated by Young when he entered his plea. The offense

level anticipated by Young and the government at that time was 26. He claims that the government's support of the adjustment for Young's role in the offense, although not *explicitly* prohibited by the "departure" language in the plea agreement, violated the spirit of the plea and constitutes a breach. He further argues, erroneously, that the government's actions in support of the career offender provision were an outright breach of the agreement, because an application of the career criminal language constitutes a departure under the guidelines.

By its terms, the government acted in accordance with the agreement. The plea agreement unambiguously lacks any promise by the government not to recommend sentencing adjustments that could cause Young's sentence to increase. It merely prohibits the government from advocating a departure, which the government did not do. Compare U.S.S.G. § 1B1.1 cmt.1(E) (defining "departure" as the imposition of a sentence outside the applicable guideline range or of a sentence that is otherwise different from the guideline sentence) with §§ 2A1.1 et seq. (discussing adjustments made to offense levels upwards and downwards within the applicable guideline range); United States v. Moreno-Trevino, 432 F.3d 1181, 1184 (10th Cir. 2005) (providing an example of a court's application of adjustments and departures).

We are also unpersuaded by Young's claim of surprise at the district court's application of the guidelines regarding Young's role in the offense and the career offender provisions. Paragraph fourteen of the agreement specifically provides that the government may respond to comments made or positions taken by the defendant or

-7-

defendant's counsel, and that it could correct any misstatements or inaccuracies. The adjustment for Young's role in the offense as well as the application of the career offender provisions were reasonable calculations arrived at through a straightforward guideline application; an application that Young specifically agreed to in his plea. The government was not precluded from responding to Young's challenges to those portions of the PSR at sentencing. See United States v. Rodriguez-Delma, 456 F.3d 1246, 1247, 1249-51 (10th Cir. 2006) (holding that the government did not breach its agreement not to oppose the defendant's contention that his base offense level not be increased for his role in the offense because the government was merely discussing the scope of the defendant's criminal activities in an attempt to inform the court, and that discussion "did not rise to the level of advocacy" for the role enhancement).

Likewise, here, the government was responding to Young's objection to the role in the offense enhancement. At the hearing, the government responded to Young's counsel's assertion that "for the life of [him]," he could not understand why the enhancement applied. The government responded to the particular concerns raised by Young's lawyer acknowledging that Young was a leader in this enterprise. As to the career offender provision, the government only responded in writing to Young's objection that "it's not fair" to apply that status to him, stating simply that there was no legal basis for the court to decline to accept Young's conviction as a violent felon. At sentencing, Young's counsel again argued that "darn it, it just isn't fair" that an application of the career offender provisions mandated a heavier sentence. The district court, however, overruled

the contention without comment from the government. These responses neither provided a prohibited "legal characterization" of the facts nor argued their effect to the sentencing judge. Peterson, 225 F.3d at 1172. The government only drew the court's attention to facts contained in the PSR. Accordingly, the government did not breach the agreement as Young alleges.

### C.     Pending Motion to Enforce

Finally, because the government did not breach the plea agreement, we reach the merits of the pending motion to enforce. Young claims that we should not enforce this agreement because he did not enter into the plea agreement knowingly and voluntarily.

Whether Young's plea was knowing and voluntary is a question of law we review de novo. United States v. Asch, 207 F.3d 1238, 1242 (10th Cir. 2000). "Given the importance of plea bargaining to the criminal justice system, we generally enforce plea agreements and their concomitant waivers of appellate rights." United States v. Hahn, 359 F.3d 1315, 1318 (10th Cir. 2004). In Hahn, we held that in reviewing the enforceability of appeal waivers, the court will determine "(1) whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice." Id. at 1325. As to the second prong, we examine the language of the plea agreement itself and whether it states that the defendant entered the agreement knowingly and voluntarily, along with the Rule 11 colloquy that occurred at the time the plea was made. Id.

Here, Young's appeal falls within the scope of the appellate waiver and the waiver language states that Young entered into it knowingly and voluntarily. Accordingly, our query is informed by Young's colloquy with the district court at the time it accepted Young's guilty plea, as well as our own determination that enforcing this agreement would not result in a miscarriage of justice.

Young bears the burden of presenting evidence that he did not understand the waiver. Id. at 1329. He does not meet that burden here. Young claims that his plea was not entered into knowingly and voluntarily (1) because counsel did not advise him of the possible applicability of the career offender provisions prior to his guilty plea–essentially an ineffective assistance of counsel claim, and (2) because certain comments by the district court "could have been reasonably interpreted by the defendant to mean that his prior conviction would have no consequence on the current charge to which he was pleading."

We review a challenge to Young's plea based upon a claim of ineffective assistance of counsel using the two-part test announced in Strickland v. Washington, 466 U.S. 668 (1984). Under this test, Young must show that his prior counsel's performance "fell below an objective standard of reasonableness," id. at 688, and that the deficient performance resulted in prejudice in the guilty plea context. Id. at 691. "To show prejudice in the guilty plea context, [Young] must establish that 'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and insisted on

going to trial.'" United States v. Gordon, 4 F.3d 1567, 1570 (10th Cir. 1993) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)).

Young fails to demonstrate that prior counsel's alleged failure to advise Young about the potential application of the career offender provision constituted ineffective assistance of counsel entitling him to relief. "A miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel." Id.

Additionally, a review of the plea colloquy demonstrates that Young understood the rights he was waiving and the terms of the plea agreement and that the court would review his past criminal record in arriving at a sentence.[3] Young indicated that he knew the consequences of a guilty plea and that he was satisfied with his counsel's representation. The court explained that its final calculation of Young's sentence could differ from any calculation made by Young's attorney and that anything discovered during the presentence investigation could have a "big effect," unanticipated by counsel, on Young's final sentence. The court also made it clear to Young that by waiving his appeal rights, if a disagreement ensued about which sentencing guidelines apply, he would be unable to do anything about it and that, ultimately, the court was not bound in any way by the suggestions agreed upon in the agreement. When asked, Young responded that he understood that the court could take into account many things at

---

[3]We note that there was not a second plea colloquy on June 10, 2005, the date the district court granted Young's section 2255 relief and vacated and reinstated the original sentence. Accordingly, we look to the colloquy of the original sentence.

sentencing, including his past criminal record and his role in the offense relative to the roles others played.

This colloquy leaves us with no doubt that Young's plea was knowing and voluntary. And, Young demonstrated no prejudice–that but for these alleged errors of his counsel, he would not have pleaded guilty and insisted on going to trial. Lockhart, 474 U.S. at 59. Finally, enforcing this plea agreement would not result in a miscarriage of justice. See Hahn, 359 F.3d at 1327 (setting out situations where miscarriage of justice occurs).

## III. CONCLUSION

For the reasons stated herein, we grant the pending motion for enforcement of plea agreement and dismiss the appeal.

ENTERED FOR THE COURT

C. Arlen Beam
Circuit Judge

-12-