RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 11a0305p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT
————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

No. 10-1901

*v.*

MICHAEL KELLER,

*Defendant-Appellant.*

————————————

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 09-20303-01—Stephen J. Murphy, III, District Judge.

Decided and Filed: December 7, 2011

Before: MARTIN, GUY, and GRIFFIN, Circuit Judges.

————————————

**COUNSEL**

————————————

**ON BRIEF:** Bradley R. Hall, FEDERAL DEFENDER OFFICE, Detroit, Michigan, for
Appellant. Margaret Marie Smith, ASSISTANT UNITED STATES ATTORNEY,
Detroit, Michigan, for Appellee.

————————————

**OPINION**

————————————

BOYCE F. MARTIN, JR., Circuit Judge. On July 8, 2009, a grand jury returned
a twenty-six-count indictment charging Michael Keller with an array of offenses. Keller
entered a plea agreement with the Government on January 28, 2010. The Government
breached the agreement by arguing for a longer sentence than provided by the
agreement. Keller was sentenced to 168 months' imprisonment. Keller appeals, arguing
that (1) the Government's breach of the plea agreement requires this Court to remand for
resentencing; (2) his objection to the sentencing calculations limited the scope of his

1

waiver of appeal; (3) the Government's breach released him from his waiver of appeal under the plea agreement; and (4) the district court's application of the four-level enhancement was error.

Because the Government's breach did not affect Keller's substantial rights and his appeal has been waived, we **AFFIRM** the district court's decision and **DISMISS** his appeal.

I.

Keller agreed to plead guilty to three of the twenty-six counts charged in the indictment: two counts of felon-in-possession of a firearm and one count of distribution of more than five grams of crack cocaine. He also "waive[d] any right he ha[d] to appeal his conviction or sentence," subject to the condition that his sentence was within the guideline range as determined by Paragraph 2B of the agreement.

In return, the Government agreed to dismiss the remaining twenty-three counts and, as provided in Paragraph 3A of the plea agreement, "make a non-binding recommendation that the sentence of imprisonment be no more than the high-end of the sentencing guideline range as determined by Paragraph 2B."

Paragraph 2B provides:

> There are no sentencing guideline disputes. Defendant's guideline range is **188-235 months**, as set forth on the attached worksheets. If the Court finds:
>> (a)  That the defendant's criminal history category is higher or lower than reflected on the attached worksheets.
>>          . . .
> and if any such finding results in a guideline range higher or lower than **188-235 months**, the higher or lower guideline range becomes the agreed range.

The word "no" in the first sentence is crossed out with an "x," and the initials "MK" (Keller) and "AD" (his counsel) appear to the left of the "x." Page three of the worksheet appended to the plea agreement contains the handwritten notation "[t]he

parties have not reached agreement concerning the applicable guideline range" and is initialed "MK" and "AD."

During the plea agreement hearing, Keller noted his objection to the Government's sentencing guideline calculations but acknowledged he was bound, under his plea agreement, to the district court's guideline range determination. The district court explained that, if it sentenced him within the recommended range, Keller would be barred from appeal. Keller stated that he understood.

The presentence report calculated a guideline range of 135-168 months' imprisonment, based on its calculation of an offense level of thirty-three and a criminal history category of I. Keller objected to a four-level enhancement contained in the presentence report. At Keller's sentencing hearing, the district court adopted the 135-168 month range calculation contained in the presentence report. Under Paragraph 2B, the court's adoption of the new, lower range became the agreed range. The Government breached the plea agreement by arguing for a sentence of 235 months, which exceeded the high end of the agreed range. Keller did not object to the Government's breach. The court sentenced Keller to 168 months' imprisonment, the upper limit of the agreed range, followed by five years' supervised release.

Keller asks this Court to remand the case for resentencing before a different district court judge with instructions not to apply the four-level enhancement.

II.

Keller concedes that he did not object to the Government's breach of the plea agreement in the district court. The Supreme Court has stated that "a forfeited claim that the Government has violated the terms of a plea agreement" is subject to plain error review under Federal Rule of Criminal Procedure 52(b). *Puckett v. United States*, 129 S.Ct. 1423, 1426, 1433 (2009).

Under plain error review, "before an appellate court can correct an error not raised at trial, there must be (1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights.'" *Johnson v. United States*, 520 U.S. 461, 466-67 (1997) (quoting

*United States v. Olano*, 507 U.S. 725, 732 (1993)).  The phrase "affects substantial rights" means "in most cases . . . that the error must have been prejudicial:  It must have affected the outcome of the district court proceedings."  *Olano*, 507 U.S. at 734 (citations omitted).  "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Johnson*, 520 U.S. at 467 (citation and internal quotation marks omitted).

The Government concedes that it breached its plea agreement with Keller when it agreed to "make[] a non-binding recommendation that the sentence of imprisonment be no more than the high-end of the sentencing guideline range" determined according to the terms of the plea agreement, but instead argued for a sentence that exceeded this range. The Government also concedes this "breach constituted plain error, which satisfies the first and second prong of the [plain error] test."  Thus, we begin with the third prong of our review by analyzing whether this plain error affects Keller's substantial rights.

"Normally, although perhaps not in every case, the defendant must make a specific showing of prejudice to satisfy the 'affecting substantial rights' prong of Rule 52(b)."  *Olano*, 507 U.S. at 735.  A showing of prejudice requires a showing that the plain error "affected the outcome of the district court proceedings."  *Id.* at 734.  Keller asserts that when the Government argued for a 235-month sentence the district court was "persuaded by the Government's improper argument and that it intended its sentence to accommodate the Government's concerns."  He points to certain statements made by the district court judge at sentencing that he contends prove the judge was persuaded by the Government's urging for an upward variance in ultimately sentencing Keller to the upper limit of the agreed range, and that he sentenced Keller with at least some purpose toward "effectuat[ing] many of the elements of what the Government is looking for in a lengthy 235-month term."

We find these arguments unpersuasive.  The court explicitly adopted the guideline range from the presentence report, which became the agreed range under the

terms of the plea agreement, and then sentenced Keller within that range. Keller argues that the record "contains no suggestion that the district court was unswayed by the prosecutor's argument," but it is Keller's burden to show that the court *was swayed* by the breach. While we are mindful of this Court's prior decision in *United States v. Barnes*, 278 F.3d 644 (6th Cir. 2002), we do not think its holding, post-*Puckett*, applies here. In *Barnes*, the defendant's plea agreement provided that the Government would recommend a sentence at the low end of the guidelines; the Government breached that agreement by its silence at sentencing. *Barnes* held that this breach by the Government, without evidence in the record that the district court was unswayed by the breach, satisfied both the third and fourth prongs of plain error review. *Id.* at 649.

Instead, we believe *Puckett* determines the result here: "The defendant whose plea agreement has been broken by the Government will not always be able to show prejudice, either because he obtained the benefits contemplated by the deal anyway (*e.g.*, the sentence that the prosecutor promised to request) or because he likely would not have obtained those benefits in any event." 129 S.Ct. at 1432-33. We are bound to follow *Puckett* and apply it to this case.

Keller himself notes in his brief that he was the "rare beneficiary" of a plea agreement clause "that typically works to the Government's advantage." The upper limit (168 months) of the guideline range from the presentence report was *lower* than the lower limit (188 months) of the range originally contemplated by the plea agreement. His sentence is lower than that anticipated by the plea agreement at the time he signed it. Most importantly, his sentence does not exceed the upper limit of the presentence report calculation which, when adopted by the district court, became the new agreed range. Keller cannot say he did not receive "the benefits contemplated by the deal," even though he did not receive them via the performance he expected of the Government.

Because, under *Puckett*, Keller cannot show that the breach affected his substantial rights, we do not need to consider the fourth prong of the plain error review.

III.

We turn next to the waiver of appeal.  We review de novo "the question of whether a defendant waived his right to appeal his sentence in a valid plea agreement." *United States v. McGilvery*, 403 F.3d 361, 362 (6th Cir. 2005) (citing *United States v. Murdock*, 398 F.3d 491, 496) (6th Cir. 2005)).  "It is well settled that a defendant in a criminal case may waive any right, even a constitutional right, by means of a plea agreement." *United States v. Calderon*, 388 F.3d 197, 199 (2004) (quoting *United States v. Fleming*, 239 F.3d 761, 763-64 (6th Cir. 2001)) (internal quotation marks omitted).

A.

Though Keller does not argue otherwise, we note that the district court complied with the requirements of Federal Rule of Criminal Procedure 11(b)(1)(N) by informing Keller of the terms of his waiver, ensuring that he understood those terms and that his waiver was voluntarily and knowingly made.

The plea agreement provides: "defendant waives any right he has to appeal his conviction or sentence."  The only condition on the waiver is that "the sentence imposed . . . not exceed the maximum recommended by Part 3 of this Agreement."  The "maximum recommended" sentence in Part 3 is the "high-end of the sentencing guideline range as determined by Paragraph 2B."  As we have discussed, the "high-end" of the agreed range was 168 months.  Keller's sentence was 168 months, thus satisfying the condition on the waiver as written.

Keller contends in his reply brief that his objections to the Government's calculation of the guideline limited the scope of his waiver of appeal.  Keller objected on the face of the plea agreement by crossing out the word "no" in the sentence "[t]here are no sentencing guideline disputes," and by writing "[t]he parties have not reached agreement concerning the applicable guideline range." He also objected in submissions to the court and during his plea and sentencing hearings.

Keller here attempts to shoehorn a waived appeal of his sentence into an argument about the scope of his waiver.  Though Keller disputed the *Government's*

calculations in submissions and at the sentencing hearing, the guideline range under which he was sentenced is a product of the *court's* findings. Keller's counsel noted this point at the plea hearing: "The plea agreement says that the Court will find the guideline range." The district court found that Keller's "criminal history category [was] . . . lower than" the 188-235 month range originally contemplated by the Government guideline calculations.

During the plea hearing, the court stated, "I want to make sure that this record is clear that you're pleading voluntarily but you are doing so in a manner that allows you to challenge [the Government's] calculations." Keller replied, "Yes, sir." Prior to this discussion, the court conducted a full discussion of the meaning of his appeal waiver and the nature of the guideline dispute:

> THE COURT: Just so we are clear, so that my understanding reflects that of the parties—and I do note that you modified this plea agreement on page 4 to say that there are sentencing guideline disputes and that Mr. Densemo [Counsel for Keller] and Mr. Keller both initialed that. The government has calculated the range at 188 to 235, and Mr. Keller is going to argue at sentencing or before that a lower guideline range, and, therefore, a lower sentence should be imposed for various reasons that are unknown to the Court right now, correct?
>
> MR. DENSEMO: That's correct.
>
> THE COURT: All right.
>
> MR. FELLER [Counsel for the Government]: And, Your Honor, just to be absolutely clear, the appellate waiver works off the guideline range. And just so we are absolutely clear, so long as the Court's ultimate sentence is within that 235 months, that appellate waiver is in effect.
>
> THE COURT: Okay. Understood. Mr. Densemo, do you agree—or do you believe that the agreement is in your client's best interest?
>
> MR. DENSEMO: I believe it is, Your Honor.
>  . . .
> THE COURT [Addressing the defendant]: All right. Now, the agreement says I can sentence in a certain range and not be appealed. I can sentence outside of a range and be appealed. You understand that, right?
>
> THE DEFENDANT: Yes, sir.

THE COURT: And your understanding is that if I honor the range that is recommended by the government, you won't appeal but that your lawyer is going to ask for a lower sentence in that, right? You understand that?

THE DEFENDANT: Yes, sir.

THE COURT: And I understand that's allowed by this particular agreement, okay, but if I do that, there is a chance Mr. Feller [Counsel for the Government] could appeal, you understand that as well?

THE DEFENDANT: Yes, sir.

THE COURT: All right. So with all that understanding, you still want to go forward on this thing today?

THE DEFENDANT: Yes.

The record shows that, though Keller objected to the calculations as of the plea hearing, he and his counsel understood that if the court adopted the Government's range, he could not appeal and that the waiver of that appeal was part of the inducement to the Government's agreement. The court also explained to Keller that a sentence below that range would allow the Government to appeal the sentence. Keller's objections related only to the part of the plea agreement not yet settled as of the plea agreement's entry: the calculation of the guideline range. They did not relate to the scope of the waiver of appeal. "[T]here is nothing in the record to suggest that [the] defendant misunderstood the scope of his waiver of appellate rights." *Calderon*, 388 F.3d at 200. The guideline range was ultimately reduced to 135-168 months and adopted by the district court. Keller's objections, both to the initial guideline range of 188-235 and the four-level enhancement, were aired on paper and in person at two separate hearings. Nothing in the record convinces us that the district court did not consider these objections fully. Keller was sentenced within the agreed guideline range as provided by the plea agreement. Keller's sentence satisfied the single condition of his waiver of appeal, and so he is bound by it.

This Court's decision in *Calderon* closes the issue. There, the Court considered an appeal waiver that included identical language to Keller's, but also included language that allowed the defendants in *Calderon* to "appeal on the grounds that the sentence was

imposed as a result of an incorrect application of the sentencing guideline." *Id.* at 198. Like Keller, the defendants reserved their right to "raise a sentencing issue before the district court." *Id.* at 200.

The *Calderon* Court found the language in the waiver was "clear and unlimited in scope: 'defendant waives *any right* he may have to appeal his conviction or sentence.'" *Id.* at 199. And, the Court in *Calderon* did not rest its holding on the language indicating that the defendants had waived appeal of the application of the sentencing guideline; the first clause, identical to the language of Keller's waiver, was sufficient grounds for its holding. *Id.* at 200 ("The waiver provision, to repeat, is unlimited in scope."). As to the issue of reserved rights to raise a sentencing issue before the district court, *Calderon*, *id.*, noted:

> The defendants suggest that their reservations of rights implicitly amended the plea agreements' waiver provisions because the right to raise a sentencing issue before the district court is illusory absent the right to appeal an unfavorable disposition of that issue . . . . We reject the premise underlying this suggestion. The right to raise an issue before the district court has value, it seems to us, even if it is not accompanied by a right to appeal.

In *United States v. Coker*, 514 F.3d 562 (6th Cir. 2008), the defendant "waived the right to appeal 'the sentence imposed and the manner in which it was determined' unless the court 'depart[ed] upwards' from the sentencing guidelines." *Id.* at 573. This Court held "that by disputing the district court's sentence enhancements, [the defendant] is appealing precisely what her plea agreement says that she cannot appeal." *Id.* at 574. Here, Keller's merits argument goes to the applicability of a four-level enhancement. While Keller's waiver does not include the additional language prohibiting him from disputing the manner in which his sentence was determined, the language of his waiver of "any right" of appeal is even stronger and has been so construed by this Court, *see Calderon*, 388 F.3d at 199.

The cases Keller cites from other Circuits do not convince us that our reasoning is incorrect. For example, *United States v. Bowden*, 975 F.2d 1080 (4th Cir. 1992), concerned a waiver that was conditioned upon the sentence falling "within the guidelines

. . . and the enhanced sentencing provisions of 18 U.S.C. § 924(e)." *Id.* at 1081 n.1. The *Bowden* court held that the defendant had not waived his appeal of a misapplication of the guidelines. Here, the waiver contains no such condition—Keller's right is a right to appeal any sentence falling outside the agreed range (as defined in the plea agreement), but it is not broader. The same analysis applies to Keller's argument regarding the unpublished Ninth Circuit case *United States v. Williams*, 111 F.3d 139 (9th Cir. 1997) (addressing a similar situation to that in *Bowden*). Similarly, the First Circuit held a waiver's scope did not bar appeal of a sentence where the Government provided it would request "[i]ncarceration within the guideline range" but did not specify or propose a range. *United States v. McCoy*, 508 F.3d 74, 78 (1st Cir. 2007). Here, the plea agreement proposed a range. Moreover, Keller's right to appeal is limited to his right to appeal any sentence outside the agreed range; the agreed range, as Keller's counsel noted, was for the district court to find, and did not depend upon the Government's request for "[i]ncarceration within [a] guideline range."

Because the sentence imposed on Keller did not exceed the maximum recommended sentence in the agreed range, the condition on the waiver of appeal has been satisfied.

B.

Finally, Keller argues that, even if the condition on waiver has been satisfied, the Government's breach frees him from his waiver of appeal. Keller asserts that courts "uniformly" recognize the principle that the Government's breach of a plea agreement lifts the bar on appeal for a defendant who waived that right as part of his plea agreement, and points to three cases in other Circuits that have discussed this principle. We decline to follow those courts.

The Ninth Circuit has held that "the government['s] . . . breach of [its plea] agreement released [defendant] from his promise . . . not to appeal." *United States v. Gonzalez*, 16 F.3d 985, 990 (9th Cir. 1994). The Fourth Circuit adopted the Ninth Circuit's holding in *Gonzalez*, *United States v. Bowe*, 257 F.3d 336 (2001), but held that the breach in question must be "material." *Id.* at 342. A Second Circuit case recites a

list of examples in which criminal defendants have not been required to honor their waivers, citing, without appearing to adopt its holding, *Gonzalez* as one among many of these examples.  *United States v. Rosa*, 123 F.3d 94, 98 (2d Cir. 1997).

The breach was not material because the result Keller sought in his plea agreement was the result he obtained.  The Second Circuit's decision to cite, without adopting the holding of, the *Gonzalez* case as one among many where waivers have been held unenforceable, does not persuade us that our sister Circuits have "uniformly" adopted this rule.  Only the Ninth Circuit's holding in *Gonzalez* would recommend that we release Keller from his waiver of appeal, but we decline to adopt this approach.

We hold that the Government's breach does not release Keller from his waiver of appeal.  We do not consider the merits of his appeal of his sentence because that appeal has been waived.

IV.

For the above reasons, we **AFFIRM** the district court's judgment and **DISMISS** Keller's appeal.